581 F.2d 853
 189 U.S.App.D.C. 75, 6 O.S.H. Cas.(BNA) 1377,
1978 O.S.H.D. (CCH) P 22,559
 ASSOCIATION OF BITUMINOUS CONTRACTORS, INC.
v.
Cecil D. ANDRUS, Secretary of the Interior, U. S. Department
of the Interior.
Appeal of UNITED MINE WORKERS OF AMERICA.
ASSOCIATION OF BITUMINOUS CONTRACTORS, INC.
v.
Cecil D. ANDRUS, Secretary of the Interior, U. S. Department
of the Interior,
United Mine Workers of America, Party-Defendant.
 Nos. 75-1931 and 75-1932.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 6, 1976.
Decided Feb. 22, 1978.
 
 Appeals from the United States District Court for the District of Columbia (D.C. Civil 74-1058).
 Steven B. Jacobson, Washington, D. C., with whom Harrison Combs, Washington, D. C., was on the brief, for appellant in No. 75-1931.
 John M. Rogers, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellant in No. 75-1932. Morton Hollander, Michael H. Stein, Robert E. Kopp and Michael Kimmel, Attys., Dept. of Justice, Washington, D. C., also entered appearances for appellant in No. 75-1932.
 Guy Farmer and William A. Gershuny, Washington, D. C., filed a brief on behalf of Bituminous Coal Operators' Association as amicus curiae urging reversal.
 Francis T. Coleman with whom William H. Howe and John R. Erickson, Washington, D. C., were on the brief for appellee.
 Before BAZELON, Chief Judge, and LEVENTHAL and MacKINNON, Circuit Judges.
 Opinion for the court filed by MacKINNON, Circuit Judge.
 Concurring opinion filed by LEVENTHAL, Circuit Judge.
 MacKINNON, Circuit Judge:
 
 
 1
 The events underlying this appeal begin with a decision in an earlier unconnected case involving essentially the same facts concerning the Affinity Mining Co. in West Virginia. In that case an order issued on December 21, 1970, to evacuate a slope being driven at the Keystone No. 5 coal mine operated by Affinity. A federal coal mine inspector had documented conditions at that slope constituting an imminent danger,[1] and issued the withdrawal order pursuant to section 104 of the Federal Coal Mine Health and Safety Act of 1969.[2] On February 4, 1972, the Bureau of Mines petitioned the Interior Board of Mine Operations Appeals to assess civil penalties upon Affinity Mining Company because of the conditions existing at the time of the withdrawal order.[3] The dangerous conditions were limited to the operations involved in driving the new slope, however, those excavating works were entirely under the control of Cowin Construction Company, an independent subcontractor under contract to drive the tunnel but not to mine coal. The issue in this appeal is to determine the proper party to assess under the Federal Coal Mine Health and Safety Act when construction operations present safety hazards.
 
 
 2
 The Affinity Mining case was decided in March of 1973. The Administrative Law Judge ruled that the construction company was the more "offending party," and that the proposed fine should be levied only upon it.[4] The Interior Board of Mine Operations Appeals affirmed, ruling that a proper interpretation of the Federal Coal Mine Health and Safety Act Required that Only the construction company be liable for safety or health violations connected with coal mine construction.[5] There was no further review of that decision.[6]
 
 
 3
 In July of 1974, the Association of Bituminous Contractors, Inc., a trade association of contractors who carry on coal mine construction work, brought suit in the U.S. District Court for the District of Columbia. The Association sought a declaratory judgment that an independent contractor engaged by a coal mining company for construction work (not actual mining) did not fall within the category of an "operator"[7] of a "coal mine" so that no stricture of the Federal Coal Mine Health and Safety Act, and particularly no liability for civil penalties under 30 U.S.C. § 819(a), could be imposed against independent companies performing such construction work.
 
 The statute provides:
 
 4
 (h) "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities.
 
 
 5
 30 U.S.C. § 802(h) (1970). Therefore, any person who "controls or supervises . . . a (slope) . . . to be used in . . . extracting in such area bituminous coal (etc.)" is, by definition, an "operator."
 
 
 6
 An injunction was also requested against the Secretary of the Interior "restraining (him) . . . from enforcing and applying the Act and the standards and regulations promulgated thereunder against companies engaged in the construction of coal mines. . . ." (J.A. 11). The District Court granted the relief requested in an oral opinion announced May 22, 1975 (J.A. 63), and the Secretary of the Interior has taken this appeal.[8] We reverse.
 
 I. JURISDICTION OF THE DISTRICT COURT
 
 7
 In its suit for declaratory and injunctive relief, the Association is suing essentially to overturn the Board's decision in Affinity Mining.[9] The Secretary contends that the District Court had no jurisdiction to hear such a claim, since 30 U.S.C. § 816(a) specifically provides for judicial review by the U.S. Court of Appeals. The rule he would apply here is "that where Congress has provided a special and adequate procedure for judicial review . . . that procedure is to be considered exclusive except in special circumstances not present here." Standard Forge and Axle Co., Inc. v. Coleman, 179 U.S.App.D.C. 309, 310, 551 F.2d 1268, 1269 (1977). See also Whitney National Bank v. Bank of New Orleans, 379 U.S. 411, 419, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); Investment Co. Institute v. Board of Governors of the Federal Reserve System, 179 U.S.App.D.C. 311, 551 F.2d 1270 (1977).
 
 
 8
 Closer comparison of the facts in this case and the standard asserted, however, reveals that the standard is inapposite. The "special and adequate procedure for judicial review" relied on here explicitly Excludes review of the type of order involved in Affinity Mining :
 
 
 9
 Any order or decision issued by the Secretary or the Panel under this chapter, Except an order or decision under section 819(a) of this title, shall be subject to judicial review . . . .
 
 
 10
 30 U.S.C. § 816(a) (1970) (emphasis added). Section 819(a) provides:
 
 
 11
 (1) The operator of a coal mine in which a violation occurs of a mandatory health or safety standard or who violates any other provision of this chapter . . . shall be assessed a civil penalty by the Secretary. . . .
 
 
 12
 (4) If the person against whom a civil penalty is assessed fails to pay the penalty within the time prescribed in such order, the Secretary shall file a petition for enforcement of such order in any appropriate District court of the United States. . . . The court shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order and decision of the Secretary or it may remand the proceedings to the Secretary for such further action as it may direct. The court shall consider and Determine de novo all relevant issues, except issues of fact which were or could have been litigated in review proceedings before a court of appeals under section 816 of this title . . . . (Emphasis added.)Clause (1) provided the Bureau of Mines with authority to cite the coal company in Affinity Mining. If there is a refusal to pay the fine assessed, then the entire proceeding comes up for review before the District court pursuant to clause (4), and that court is empowered to make a "de novo review of all relevant issues." Where the Interior Board of Mine Operations Appeals has dismissed the assessment of a fine, however, the matter is at an end.
 
 
 13
 Hence, to the extent that the Federal Coal Mine Health and Safety Act provides any judicial review of the Secretary's imposition of civil penalties under 30 U.S.C. § 819, review is available through a factual hearing in the district court. Where a decision has been made Not to assess penalties, however, there is no Coal Mine Act statutory review procedure at all. If any such decision constitutes "agency action" causing some person to suffer "legal wrong," judicial review would be available by 5 U.S.C. § 702, but the Administrative Procedure Act does not designate the court in which such a petition should be brought. As declaratory judgment and injunctive relief are being sought, and the question involves an interpretation of federal law relevant to interstate commerce, jurisdiction in the district court would be appropriate under 28 U.S.C. §§ 1331, 1337, 1651 & 2201 (1970).
 
 
 14
 This case is, therefore, fundamentally different from those in which judicial review, direct from the agency, has been found to be exclusively vested in the appropriate U.S. Circuit Court of Appeals. Investment Co. Institute, supra, for example, involved informal rulemaking in which the appellant had participated, followed by an interpretative ruling by the Federal Reserve Board. "Neither appellant nor any interested party sought judicial review in a court of appeals . . . ." Investment Co. Institute, supra, 179 U.S.App.D.C. at 316, 551 F.2d at 1275. Also, the court found that the Bank Holding Company Act which was being construed in Investment Co. Institute looked to the Federal Reserve Board to develop the necessary administrative record, obviating any need for the district court to determine facts. "It is the availability of a record for review and not the holding of a quasi-judicial hearing which is now the jurisdictional touchstone." Investment Co. Institute, supra, at 318, 551 F.2d at 1277, Quoting Deutsche Lufthansa Aktiengesellschaft v. CAB, 156 U.S.App.D.C. 191, 195, 479 F.2d 912, 916 (1973).
 
 
 15
 In the case of a civil penalty assessed for violations of mandatory health and safety standards, the Federal Coal Mine Health and Safety Act demonstrates precisely the opposite intent, for, despite the full hearing before the Secretary mandated by 30 U.S.C. § 819(a)(3), any and all "relevant issues" are to be reheard, De novo by a district court. 30 U.S.C. § 819(a)(4).[10] One simply cannot read into the Coal Mine Act the antipathy to district court adjudication that was inferred in the Whitney National Bank; Investment Co. Institute line of cases.[11]
 
 
 16
 Finally, in Whitney National Bank; Macauley v. Waterman Steamship Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839 (1946); and Standard Forge and Axle and Investment Co. Institute, all of which are cited in support of exclusive appellate court review, the decision being appealed was either rule-making in which petitioner had participated, or adjudication in which petitioners had been a party. Here, the Association of Bituminous Contractors had no role to play in the adjudication of Affinity Mining's non-liability. As one source relied on in Investment Co. Institute has commented:
 
 
 17
 (A) rule that foreclosed all opportunity for nonparty judicial review would seem too harsh. An individual ultimately affected by agency action might not attempt to intervene in the initial proceeding for a number of legitimate reasons. (footnote: See Gage v. AEC (156 U.S.App.D.C. 231, 235), 479 F.2d 1214, 1218 (D.C. Cir. 1973) . . . .) He may not realize that the agency's decision is likely to operate against his interests. More commonly, he may not be aware that the agency is taking action at all.[12] Moreover, prohibiting all nonparty review would have the disadvantage of encouraging unnecessary intervention by persons whose interests are unlikely to be affected by an administrative hearing.
 
 
 18
 Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals, 88 Harv.L.Rev. 980, 996 (1975).
 
 
 19
 The specific appeal sections of the Coal Mine Health and Safety Act do not apply to the review here sought of the Secretary's failure to hold coal mine operators liable. What guidance is obtainable from the statute indicates a desire to have federal district courts consider findings of law and fact. Hence, we hold that the district court had jurisdiction to hear the present case.
 
 II. RIPENESS
 
 20
 Jurisdiction does not settle the issue of justiciability, however. The Secretary contends that the Association's suit for declaratory judgment was not ripe for adjudication. Affinity Mining overturned a levying of penalties on a coal mine operator, but it did not impose any penalty on the contractor. The Secretary argues that a proper appeal could be brought only by a construction contractor who had been found liable under 30 U.S.C. § 819.
 
 
 21
 Although none of the present petitioners is under citation for violation of a mandatory health or safety regulation, the case is sufficiently ripe for adjudication on the authority of Abbott Laboratories v. Gardner,387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). "Pre-enforcement review,"[13] as sought in Abbott Laboratories, is requested here. Both suits were brought in district court for declaratory and injunctive relief. Abbott Laboratories involved regulations issued after informal rule-making, whereas the present case focuses on the potential application of an adjudication. The precise category of agency action, however, was not the test for ripeness in Abbott Laboratories. Rather, the Court held:
 
 
 22
 The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.
 
 
 23
 387 U.S. at 149, 87 S.Ct. at 1515.
 
 
 24
 The question of "fitness for judicial decision" comes down to a determination of whether "the issue tendered is a purely legal one" and whether the agency's action was final. Just as in Abbott Laboratories, the question raised in this case is a definitional one (whether the statutory term "operator of a coal mine" can encompass independent construction companies). No fact findings are required.
 
 
 25
 As for finality, Abbott Laboratories applies less readily because the case then before the Court, and the cases the Court relied upon, were rules or orders, not adjudications. See, e.g., Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956). However, the principles derived from those cases provide a means for measuring finality: final action is "promulgated in a formal manner," "clearly definitive," "no hint that (it) is informal . . . or only the ruling of a subordinate official . . . or tentative." 387 U.S. at 151, 87 S.Ct. at 1517. All of these factors point to finality here. In any subsequent proceeding under 30 U.S.C. § 819, the Secretary could cite a construction contractor. Review could be obtained before the Interior Board of Mine Operators Appeals, but that is precisely the body that has ruled that contractors Alone are to be held liable. Any inference of non-finality from the fact that the party that must bring any citation is not the party whose interpretation of liability is presently on appeal is also laid to rest by Abbott Laboratories, where the Attorney General had to "authorize criminal and seizure actions for violations of the statute" as interpreted in regulations promulgated by the Commissioner of Food and Drugs. 387 U.S. at 151, 87 S.Ct. at 1517.
 
 
 26
 Of course, it is possible for the Interior Board to reverse itself in a subsequent adjudication. It would have been equally possible for the Commissioner to rescind the regulation in Abbott Laboratories. Until either event occurs, however, the threat of enforcement is a serious encumbrance with which the regulated companies are burdened. Thus, considerations of finality blend into an analysis of the impact of the regulations and the harm they are likely to cause to concerned parties even in the absence of direct application. "(T)he test of ripeness . . . depends not only on how adequately a court can deal with the legal issue presented, but also on the degree and nature of the regulation's present effect on those seeking relief."[14] Here, the similarity between the present case and Abbott Laboratories is most strong. Independent coal mine construction contractors threatened with potential liability are likely to make the necessary safety investments rather than insist that the coal mine operators incur such expenditure. If liability insurance is available, it is expectable that the construction companies will purchase it. It was just this situation a company being forced to incur all the expenses that regulation would entail before it can challenge the regulation in a specific adjudication, or suffering heavy fines if it did not make the expenditures that led the Court in Abbott Laboratories to find sufficient present harm to conclude that the case was ripe.[15]
 
 
 27
 As a practical matter, after the decision in Affinity Mining was handed down, coal mine construction companies knew that the Bureau of Mines would impose liability on them, for unsafe or unhealthy conditions. They were faced with sizeable investments to take over safety expenditures from the coal mine operators, even though it was possible that the entire premise for such expense was not legally sound. In order to challenge that premise before the payment of such costs made their claim moot, petitioners were entitled to seek the declaratory and injunctive relief in the district court.
 
 III. THE COLLATERAL ESTOPPEL EFFECT
 
 28
 In National Independent Coal Operator's Association v. Brennan, 372 F.Supp. 16 (D.D.C.1974), the Association of Bituminous Contractors, Inc., was also a plaintiff. Suit was brought for injunctive relief against the application of Title IV of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. § 901 et seq. (1970), as amended (Supp. V 1975)), to coal mine construction companies. The court concluded that the Secretary's regulation including "all coal mine construction companies, whether or not they engage in the extraction of coal" as "operators" "exceeds and is inconsistent with the definition of operator stated at Section 3(d) of the Act." 372 F.Supp. at 25. Section 3(d) of the Act, 30 U.S.C. § 802(d) (1970), is part of the general definition section. It applies to the civil penalties section 30 U.S.C. § 819, at issue here, as well as to Title IV, which was at issue in National Independent. The Association seeks to assert its victory in National Independent as collateral estoppel against the Secretary of the Interior in the present proceeding.
 
 
 29
 Collateral estoppel is available "between the same parties as those to the original suit . . . (where) the very fact or point now in issue was, in the former action, (1) litigated by the parties; (2) determined by the tribunal; and (3) necessarily so determined." F. James, Civil Procedure (1965) § 11.18 at 576.[16] One problem is sufficient to dispose of this issue: the third requirement for collateral estoppel is plainly not met. It was not Necessary To the decision in National Independent To find that construction contractors were not encompassed within the general statutory definition. The issue in that case was simply an operator's obligation to provide insurance or to self-insure in order to afford black-lung compensation payments under Title IV of the Act. The district court's opinion is replete with findings specific to the black-lung issue. There is no discussion of the statutory provisions relating to imminent dangers or safety standards. The district court found that "The determination by the Secretary . . . that such coal mine construction companies are operators within the meaning of the Act contravenes the legislative intent, scheme and purpose Of Title IV." 372 F.Supp. at 25 (emphasis added). Every one of the court's findings may similarly be limited to Title IV of the Act, since that was the only section at issue. Hence, the court's conclusion that coal mine construction companies are not operators within the meaning of the general definition of 30 U.S.C. § 802(d) was broader than Necessary For the outcome reached. Collateral estoppel will not extend a finding reached in the context of pneumonoconiosis to a case involving danger of mine collapse or explosion.[17]
 
 IV. THE MERITS
 
 30
 At last, we may turn to the merits of the district court's decision. During the pendency of this appeal, the Fourth Circuit has issued its opinion by Judge Butzner in Bituminous Coal Operators' Association v. Secretary of Interior, 547 F.2d 240 (4th Cir. 1977), ("BCOA ") which provides guidance to our consideration of this case.[18] The BCOA Litigation arose as yet another chapter in the Affinity Mining History. Subsequent to the issuance of the District Court's opinion in the present case, the Secretary of the Interior ordered that federal coal mine inspectors were to cite coal mining companies for violations of mandatory safety regulations at the site of coal mine Construction Operations. The Coal Operator's Association challenged that order in the U.S. District Court for the Western District of Virginia[19] in much the same way that the contractors' association challenged Affinity Mining In the present litigation before the U.S. District Court for the District of Columbia.
 
 
 31
 The question is one of statutory construction. The definitional section of the Coal Mine Health and Safety Act specifies that the term
 
 
 32
 (d) "operator" means any owner, lessee, or Other Person who operates, controls, or supervises a coal mine . . . .
 
 
 33
 30 U.S.C. § 802(d) (1970) (emphasis added); and
 
 
 34
 (h) "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities . . . .
 
 
 35
 30 U.S.C. § 802(h) (1970).
 
 
 36
 It is a fundamental rule, too often neglected, that in statutory construction the primary dispositive source of information is the wording of the statute itself. Under 30 U.S.C. § 819(a)(1), "(t)he Operator Of a coal mine in which a violation occurs" (emphasis added) is liable for civil penalties. And by the definitional section of the statute an "operator" of a " coal mine" may be the "owner," and he may be the "lessee," and he may be an " Other Person" (emphasis added). In this context "other person" is to be read Ejusdem generis To refer to other Similar Person, "of like kind and character to the designated 'owner(§ or) lessee(s) designated.' " In so defining " operator," since the statute employs the general words "other person," following the specific words "owner, lessee," the words "other person" are to be read Ejusdem generis To refer to other persons of the same class as those enumerated by the specific words.[20] Thus, the other persons must be similar in nature to owners and lessees. That would include independent contractors who operate, control or supervise a "coal mine," as defined in the statute.
 
 
 37
 "Operator" includes a person other than an owner or lessee who operates, controls, or supervises a coal mine. A "coal mine means an area of land and all . . . shafts, slopes, tunnels, excavations, and other property . . . placed upon, under, or above the surface of such land . . . to be used in . . . the work of extracting bituminous coal." Shaft excavations and slopes are explicitly part of the definition of coal mine. Such coal mine construction operations are under the "supervision" of coal mine construction companies. It makes no difference that such companies are not owners or lessees, the fact of their control or supervision over the designated areas or facilities, under the statute, makes them "operators." For an "other person," or "lessee" to be an "operator" does not require that he control or supervise an entire coal mine. The definition may be read disjunctively. Hence, we conclude that the statutory definition on its face permits the interpretation given in Affinity Mining : an independent company engaged to do construction work at a coal mine is with respect to his contractual work an "operator of a coal mine" and is liable for violating mandatory health and safety regulations imposed in accordance with the Act.
 
 
 38
 The district court also relied on the statute's wording, but reached a contrary result. It focused on the clause " 'operator' as meaning any owner, lessee, or other person who operates, controls, or supervises a coal mine." The court held:
 
 
 39
 It is clear to the Court that the statute placed the burden of Compliance with the regulations to be developed by the Secretary and the other requirements and penalties of the Act upon "owners, lessees," not "and other persons," but, "or other persons" who actually operate, control or supervise the mine.
 
 
 40
 (J.A. 67). The court's interpretation was that only one party could actually be operating, controlling, or supervising the mine. That reading, however, does not extend to the full sense of the definition and does not fully apply the statutory definition of a "coal mine." Likewise, this is an instance where "or" means "and."[21] There is always an owner of a coal mine, yet the statute includes lessees and "other persons" within the definition of operator as well. So there must be some cases where the person who operates, controls, or supervises is not the owner. In those cases, the definition of operator must encompass the owner And such other person. The district court supports its conclusion that only one person could be an operator by reading the clause "who operates, controls, or supervises a coal mine" to apply to "owner," "lessee" And "other person." If that were the correct reading, the specification of owner and lessee would then be superfluous. The statute could merely have read " 'operator' means any person who operates, controls, or supervises a coal mine." A statutory interpretation that gives meaning to all the words used is to be preferred over one that leaves some words as inoperative.[22] We hold that an independent construction company, which operates, controls, or supervises excavation work on shafts, slopes, or tunnels to be used in the work of extracting coal[23] from a coal mine is an "operator of a coal mine" within the meaning and purposes of 30 U.S.C. § 819(a)(1).[24]
 
 
 41
 The decisions of the Interior Board of Mine Operations Appeals, Wilson v. Laurel Shaft Construction Co.,[25] and Affinity Mining, supra, Stress the importance of placing direct liability on the independent construction company as the party most able to take precautionary measures. The conclusion that coal mining companies were the only parties that could be assessed civil penalties was urged by the Bureau of Mines, but forcefully rejected by the Interior Board of Mine Operations Appeals in Affinity Mining.[26] It is not a stretching of the statute to hold that companies who profess to be as independent of the coal mine owners as these construction companies purport to be, do Control And Supervise The construction work they have contracted to perform over the area where they are working. If a coal mine owner of lessee contracts with an independent construction company for certain work within a certain area involved in the mining operation, the supervision that such a company exercises over that separate project clearly brings it within the statute. Otherwise, the owner would be constantly interfering in the work of the construction company in order to minimize his own liability for damages. The Act does not require such an inefficient method of insuring compliance with mandatory safety regulations.
 
 
 42
 This rationale provides guidance in interpreting Congressional intent in a case like the present where, by everyone's concession, there is no helpful legislative history. The interpretation given to a statute by its enforcing agency should not be overturned by a reviewing court short of convincing proof of error,[27] and the statutory construction asserted by the district court here falls far short of proving that the Board misconstrues the statute.
 
 
 43
 The Interior Board of Mine Operations Appeals did not err in holding that independent coal mine construction companies are liable in carrying out their contracts for failure to comply with the mandatory safety and health standards of the Federal Coal Mine Health and Safety Act.[28] The decision of the district court is reversed.
 
 
 44
 Judgment accordingly.
 
 
 45
 LEVENTHAL, Circuit Judge, concurring in judgment:
 
 
 46
 I concur generally in Judge MacKinnon's opinion on the merits. I concur in the judgment that the District Court had jurisdiction in this case to hear the complaint of the Association of Bituminous Contractors, Inc. (hereafter "Association"). But my approach differs from Judge MacKinnon's.
 
 
 47
 One of the difficulties with this jurisdictional issue is that it was raised cursorily in the government's brief in this court. In fact, it turns out to be a prickly question, which required much judicial research. I can understand that the Secretary may be more interested in the merits, but I should have thought some of the reasons for centralizing court presentation in the Department of Justice were a greater awareness of the importance and complexity of jurisdictional issues and a readiness to devote the time required for their sound resolution.
 
 
 48
 With that preamble, I present my views on the jurisdictional issue.
 
 
 49
 1. There are special provisions for judicial review under the Federal Coal Mine Health and Safety Act of 1969 (hereafter "Act"). The plaintiff Association (appellee) did not bring this suit under those provisions.
 
 
 50
 What plaintiff invoked was the District Court's more general jurisdiction, under 28 U.S.C. §§ 1331, 1337, 2201 (1970). That is not available as to any controversy fairly within the contemplation of the special review provisions of the Act. As this court recently observed in Investment Company Institute v. Board of Governors of the Federal Reserve System, 179 U.S.App.D.C. 311, 320, 551 F.2d 1270, 1279 (1977), "an impressive line of authority supports the . . . proposition that, even where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute." The Administrative Procedure Act itself states that "(t)he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute," except where such review would be inadequate.[1]
 
 
 51
 2. That brings us to a close examination of the special review provisions of the Act and their contemplated scope. Section 106(a) of the Act, 30 U.S.C. § 816(a) (1970), provides that "any order or decision" issued by the Secretary (or the Interior Board of Mine Operations Appeals)[2] shall be subject to review in an appropriate court of appeals.[3]
 
 
 52
 We must consider the possibility that the pertinent decision of the Secretary, here reviewed in the district court, is one actually subject to review exclusively in the court of appeals under § 816(a). That provision pertains to "any order or decision issued by the Secretary." The only exception is an order or decision under § 819(a), which involves the assessment of penalties by the Secretary. Section 819(a)(4) is a special provision for judicial review of penalty assessments.[4] It provides for suit by the Secretary in the district court to enforce the collection of a civil penalty imposed for violation of a mandatory health or safety standard.
 
 
 53
 A petition under § 816 must be filed by a "person aggrieved", but certainly the bituminous contractors comprising the plaintiff Association, and the Association suing in behalf of its members, were "aggrieved" as that term is understood under current principles of administrative law.[5]
 
 
 54
 Although there is no other explicit qualification to the scope of § 816(a), it is implicit in the structure of the section that Congress contemplated review by the court of appeals on the basis of an administrative record developed prior to the decision of the Secretary or the Interior Board of Mine Operations Appeals (Board), which acts under delegation by the Secretary.[6] Undoubtedly the chief work envisioned for the court of appeals under § 816(a) was that of reviewing challenges to withdrawal orders (orders closing mines because of imminent danger due to safety or health violations) and challenges to abatement orders (requiring correction of a violation within an allotted time) after those challenges had been passed on by the Board.[7]
 
 
 55
 One panel of the Fourth Circuit has stated that such appeals delimit the full scope of § 816.[8] That conclusion in the Bituminous Coal Operators ' opinion reflects, I think, a hasty reading of the statute. The provision for judicial review of "any order or decision issued by the Secretary," extends, in my view, to an order promulgating health or safety standards.[9] The Act calls for notice of such proposed standards, receipt of data and comments thereon, and then some kind of public hearing if formal objections are filed. The final promulgation of health and safety standards is, in my opinion, subject to judicial review in the court of appeals.[10]
 
 
 56
 Another indication that review by the court of appeals under § 816 is broader than that set forth by the Fourth Circuit in the Bituminous Coal Operators ' opinion appears from the provision in § 816 for judicial review of "any order or decision issued . . . by the Panel."[11] The duties given to the Panel by the Act relate to the approval of permits for noncompliance with certain interim standards. See, e.g., 30 U.S.C. § 865(a) (1970).
 
 
 57
 I am by no means clear as to the correctness of the Fourth Circuit's ruling in Bituminous Coal Operators ' that the district court had jurisdiction of the controversy. The question is not an easy one. There was a "decision by the Secretary," that he would hold the operators to the standards of the Act even as to construction work done by independent contractors. True, it was not entered on the basis of a record. But the question arises whether that is a necessary condition to § 816 review by a court of appeals. In other instances, the familiar provisions for review by a court of appeals of an adverse agency decision have established jurisdiction in the court of appeals even though the agency treated the issue as one purely of law, without any provision for evidentiary hearing.[12] When a "decision" is not directed to a particular party, but is an interpretative ruling, does the issue of review under § 816 come to depend on whether the Secretary has conducted a notice-and-comment proceeding? Arguments may be made both ways.
 
 
 58
 In this case, however, we have an unusual situation that excludes review under § 816 because the crucial departmental ruling the Board's decision in Affinity Mining Company was a decision on an appeal, under § 819, from the Secretary's imposition of a civil penalty. And a decision arising under § 819(a) is explicitly excluded from § 816 review.
 
 
 59
 3. That brings up the question whether plaintiff Association, unable to proceed under § 816(a) in a court of appeals, validly invoked the general equitable jurisdiction of the district court.
 
 
 60
 I think the answer is yes because the contractors had no other route for review of the Department's Affinity ruling that contractors were liable, no route short of waiting for enforcement proceedings and meanwhile facing withdrawal and abatement orders, and possible civil penalty assessments.
 
 
 61
 The Affinity ruling set forth the liability of construction contractors, but it was rendered in a case (a) where no construction contractor was a party, and (b) there was no penalty levied. The Board exonerated the subject of the penalty proceeding, Affinity Mining, a mine operator, while stating that in like circumstances in the future it would hold the mine contractor liable. In that state of facts, the construction contractors were faced with a situation that called for some judicial review yet fell outside the special judicial review provisions of the Act. Therefore the District Court had jurisdiction. See Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 280-82, 443 F.2d 689, 695-97 (1971).
 
 
 62
 4. What troubles me about Judge MacKinnon's opinion is that it goes beyond this simple ground for jurisdiction and makes an observation about the Federal Coal Mine Health and Safety Act that I think is misleading and unnecessary for purposes of disposing of this case. Judge MacKinnon distinguishes this case from Investment Company Institute by arguing that, unlike the Bank Holding Company Act, there is no antipathy to district court review under the Federal Coal Mine Health and Safety Act. As evidence for this proposition, Judge MacKinnon points to § 819(a)(4), the provision for district court enforcement of civil penalties. In such enforcement proceedings, according to Judge MacKinnon, "any and all 'relevant issues' are to be reheard De novo by a district court."
 
 
 63
 In National Coal Operators' Association v. Kleppe, 423 U.S. 388, 96 S.Ct. 809, 46 L.Ed.2d 580 (1976), the Supreme Court described review under section 819(a) (4) as follows:
 
 
 64
 If the operator does not pay the penalty assessed, the Secretary is required, pursuant to § 109(a)(4), 30 U.S.C. § 819(a)(4), to petition for judicial enforcement of the assessment in the district court for the district in which the mine is located. At that stage the court must resolve the issues relevant to the amount of the penalty in a De novo proceeding with a jury trial if requested. The trial De novo with a jury is not available for review of issues of fact which "were or could have been litigated" in the court of appeals under § 106.
 
 
 65
 Id. at 393, 96 S.Ct. at 812 (footnote omitted). As to the contention that trial De novo is available on the factual basis of the violation as well as on the amount of the penalty, the Supreme Court observed that "the statutory scheme is less than clear," and declined to reach the issue.[13] This court should follow the Supreme Court's lead and not intimate any views on review under § 819(a)(4). Given the scant presentation by the government, this court simply is not in a good position to expatiate on the scope of that subsection. Section 819(a)(4) gives the district court jurisdiction to determine issues relevant to the penalty, but that should not generate a broad conclusion of hospitality to district court review under the Federal Coal Mine Health and Safety Act. Indeed, § 819(a)(4) expressly excludes from district court review "issues of fact which were or could have been litigated in review proceedings before a court of appeals under section 816." The scope of district court review, therefore, is dependent on an anterior determination of the scope of court of appeals review. For the present case, that the Association had no opportunity for judicial review under the special review provisions of the Act is enough to establish general district court jurisdiction. That should end the jurisdictional discussion in this case.
 
 
 66
 On the merits, I am in accord with Judge MacKinnon's exposition.
 
 
 
 [1]
 "(I)mminent danger" means the existence of any condition or practice in a coal mine which could reasonably be expected to cause death or serious physical harm before such condition can be abated
 30 U.S.C. § 802(j) (1970).
 
 
 [2]
 (a) If, upon any inspection of a coal mine, an authorized representative of the Secretary finds that an imminent danger exists, such representative shall determine the area throughout which such danger exists, and thereupon shall issue forthwith an order requiring the operator of the mine or his agent to cause immediately all persons, except those referred to in subsection (d) of this section, to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such imminent danger no longer exists
 30 U.S.C. § 814(a) (1970).
 
 
 [3]
 30 U.S.C. § 819(a) (1970)
 
 
 [4]
 Affinity Mining Co. Keystone No. 5 Mine, 80 Interior Dec. 231, 235 (Int. Bd. Mine Op. App., ALJ 1972)
 
 
 [5]
 Affinity Mining Co. Keystone No. 5 Mine, 80 Interior Dec. 229 (Int. Bd. Mine Op. App. 1973)
 
 
 [6]
 See discussion at p. --- of --- U.S.App.D.C., at p. 857 of 581 F.2d, Infra
 
 
 [7]
 "(O)perator" means any owner, lessee, or other person who operates, controls, or supervises a coal mine . . . . 30 U.S.C. § 802(d) (1970)
 
 
 [8]
 After the district court's decision, the Secretary of the Interior issued Order No. 2977 (August 21, 1975), "issued to comply with the declaratory judgment order in" this case. Notwithstanding this, the Secretary has never acceded to the district court's order. The history of these subsequent developments is reported further in Republic Steel Corp. v. Interior Bd. of Mine Op. App., --- U.S.App.D.C. ---, 581 F.2d 868, also decided today
 
 
 [9]
 The Interior Board actually reached the same conclusion that construction companies were coal mine operators, earlier, in Wilson & Rummel v. Laurel Shaft Const. Co., Inc., 79 Interior Dec. 701 (Bd. Mine Op. App. 1972), but the statute there provided "(n)o person shall discharge . . . any miner," 30 U.S.C. § 820(b)(1) (1970), so the interpretation of the word "operator" was not necessary to the outcome of the decision
 
 
 [10]
 We do not decide just what issues are subject to De novo review under this formulation. See National Coal Operators' Ass'n v. Kleppe, 423 U.S. 388, 393 n.3, 96 S.Ct. 809, 46 L.Ed.2d 580 (1976). The important point is that the statute affords review of the assessment of civil penalties in the district court, rather than the court of appeals
 
 
 [11]
 In Whitney Nat'l Bank, for example, the Court heavily based its decision that review jurisdiction lay exclusively in the appellate court on the legislative history of the relevant statute "which shows that Congress rejected a proposal, for De novo review in the district courts of Board decisions on holding company proposals." 379 U.S. at 420, 85 S.Ct. at 557
 
 
 [12]
 This is especially likely in a case such as the one presented here, where the agency action is adjudication rather than rule-making
 
 
 [13]
 387 U.S. at 139 & n.1, 87 S.Ct. 1507
 
 
 [14]
 Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967)
 
 
 [15]
 By contrast, in Toilet Goods Ass'n, supra, there was no immediacy of harm, no likelihood of "heavy fines . . . and possible criminal liability" as there was in Abbott Laboratories, and as there is in the present case. 387 U.S. at 165, 87 S.Ct. at 1525
 
 
 [16]
 A multitude of difficulties stand in the way of the Association's claimed reliance on collateral estoppel, namely: whether the Secretary of the Interior should be considered a party privy to the Secretary of Labor, whether "mutuality of estoppel" (See F. James, Civil Procedure (1965) § 11.31) would prevent the Association from relying on its earlier victory when the Secretary of Interior could not so have relied had the Association lost, and whether use of collateral estoppel as an offensive weapon should be permitted
 
 
 [17]
 The distinction being drawn is very much a matter of substance and not merely of form. Whereas exposure to coal dust and other pneumonoconiosis-inducing irritants might well be limited to those operations involved in the actual extraction of coal, the dangers of explosion and collapse are shared by mines already in operation and construction shafts alike
 
 
 [18]
 The Fourth Circuit opinion is also helpful on the issues of jurisdiction and ripeness discussed above
 
 
 [19]
 The decision of the district court is reported in Bituminous Coal Operators' Ass'n v. Hathaway, 406 F.Supp. 371 (W.D.Va.1975)
 
 
 [20]
 Cleveland v. United States, 329 U.S. 14, 18, 67 S.Ct. 13, 91 L.Ed. 12 (1946); United States v. Stever, 222 U.S. 167, 174-175, 32 S.Ct. 51, 56 L.Ed. 145 (1911). 2A Sutherland, Statutory Construction (4th ed. C. Sands 1973) § 47.17 states:
 A variation of the doctrine of noscitur a sociis is that of ejusdem generis. Where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words (citing cases) (footnote omitted).
 
 
 [21]
 De Sylva v. Ballentine, 351 U.S. 570, 573-574, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); Union Ins. Co. v. United States, 6 Wall. 759, 764, 18 L.Ed. 759 (1867); United States v. Fisk, 3 Wall. 445, 447, 18 L.Ed. 243 (1865)
 
 
 [22]
 "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error
 2A Sutherland, Statutory Construction (4th ed. C. Sands 1973) § 46.06.
 
 
 [23]
 All of these terms are taken from the statutory definition section, 30 U.S.C. § 802(d) and (h). In National Indep. Coal Operator's Ass'n v. Brennan, 372 F.Supp. 16, 25 (D.D.C.1974), the district court ruled that the "reference in the statutory definition of a coal mine, Section 3(h) of the Act, to equipment, structures and property 'to be used in' a coal mine was meant by Congress to refer solely to the extracting of coal." As above noted in text, that case concerned pneumonoconiosis benefits, not safety standards. However, even if the court's opinion is accepted here, it does not preclude our result. The statute is not limited to "equipment, structures and property," it specifically mentions "all structures, . . . equipment, Shafts, tunnels, excavations, And other property," (emphasis added), and applies to each of those terms the phrase "used in, or To be used In" extracting coal. Hence, shafts, tunnels, and excavations to be used in the future for coal extraction fall within the definition, and the use of the future tense necessarily incorporates excavations under construction within the definition
 
 
 [24]
 Potential support for the district court's interpretation might also be taken from the definition of "coal mine" in 30 U.S.C. § 802(h). Although the district court did not rely on this section, it could be argued that the strict words of the statute, " 'coal mine' Means," rather than " 'coal mine' Includes," should be taken to imply that one single operation was intended. The statute makes a coal mine out of "an area of land" and the structures, excavation slopes, etc. upon, under, or above it. The argument is not persuasive, however, since there is no limit expressed as to the size of the area of land. The area of land directly involved in an excavation, even though less than the full extent of the property owned by the coal mining company, would be within the language of the statute
 
 
 [25]
 1 IBMA 217, 79 Interior Dec. 701 (Bd.Mine Op.App.1972). See 79 Interior Dec. at 705-6
 
 
 [26]
 2 IBMA at 57, 80 Interior Dec. at 229
 
 
 [27]
 "(T)he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . ." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). See also District 6, UMW v. Department of Interior Board of Mine Operations Appeals, 183 U.S.App.D.C. 312, 320, 562 F.2d 1260, 1268 (1977)
 
 
 [28]
 The present petitioners sought a declaration that construction contractors could not be held liable under the Act, and we rule today that no such declaration is possible. The actual decision in Affinity Mining Was that Only Contractors, and not owners could be held liable for violations of safety standards at construction operations, in the absence of material abetting of the violation by the owner. 80 Interior Dec. at 231. Whether Only Contractors can be held liable, is not presented in this case
 
 
 [1]
 APA § 10(b), 5 U.S.C. § 703 (1976)
 
 
 [2]
 The Secretary has delegated his review authority under the Federal Coal Mine Health and Safety Act of 1969 to the Interior Board of Mine Operations Appeals. 43 C.F.R. § 4.500 (1976)
 
 
 [3]
 30 U.S.C. § 816(a) (1970):
 Any order or decision issued by the Secretary or the Panel under this chapter, except an order or decision under section 819(a) of this title, shall be subject to judicial review by the United States court of appeals for the circuit in which the affected mine is located, or the United States Court of Appeals for the District of Columbia Circuit, upon the filing in such court within thirty days from the date of such order or decision of a petition by any person aggrieved by the order or decision praying that the order or decision be modified or set aside in whole or in part, except that the court shall not consider such petition unless such person has exhausted the administrative remedies available under this chapter. A copy of the petition shall forthwith be sent by registered or certified mail to the other party and to the Secretary or the Panel, and thereupon the Secretary or the Panel shall certify and file in such court the record upon which the order or decision complained of was issued, as provided in section 2112 of Title 28.
 
 
 [4]
 30 U.S.C. § 819(a)(4) (1970):
 If the person against whom a civil penalty is assessed fails to pay the penalty within the time prescribed in such order, the Secretary shall file a petition for enforcement of such order in any appropriate district court of the United States. The petition shall designate the person against whom the order is sought to be enforced as the respondent. A copy of the petition shall forthwith be sent by registered or certified mail to the respondent and to the representative of the miners in the affected mine or the operator, as the case may be, and thereupon the Secretary shall certify and file in such court the record upon which such order sought to be enforced was issued. The court shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order and decision of the Secretary or it may remand the proceedings to the Secretary for such further action as it may direct. The court shall consider and determine de novo all relevant issues, except issues of fact which were or could have been litigated in review proceedings before a court of appeals under section 816 of this title, and upon the request of the respondent, such issues of fact which are in dispute shall be submitted to a jury. On the basis of the jury's findings, the court shall determine the amount of the penalty to be imposed. Subject to the direction and control of the Attorney General, as provided in section 507(b) of Title 28, attorneys appointed by the Secretary may appear for and represent him in any action to enforce an order assessing civil penalties under this paragraph.
 
 
 [5]
 See, e.g., Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); K. Davis, Administrative Law Treatise § 22.02 (1970 Supp.). Considerations of ripeness are paramount in cases such as this where a rule of law is the product of an adjudication to which the persons allegedly aggrieved were not a party. But as Judge MacKinnon points out in his discussion of ripeness, the liability rule set out in Affinity Mining Co., 2 IMBA 57, 80 I.D. 229 (1973), was clearly addressed to contractors and, unless they chose to defy the law, was necessarily to have an impact on their operations. As the Supreme Court observed in Abbott Laboratories v. Gardner, 387 U.S. 136, 152, 87 S.Ct. 1507, 1561, 18 L.Ed.2d 681 (1967), "the impact . . . upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage."
 
 
 [6]
 Section 816(a) provides that "the Secretary or the Panel shall certify and file in such court the record upon which the order or decision complained of was issued, as provided in section 2112 of Title 28." That review under § 816 is predicated on the existence of an administrative record is also implicit in § 816(b), which states that findings of the Secretary or Panel shall be subject to a "substantial evidence" standard of review
 The court shall hear such petition on the record made before the Secretary or the Panel. The findings of the Secretary or the Panel, if supported by substantial evidence on the record considered as a whole, shall be conclusive. The court may affirm, vacate, or modify any order or decision or may remand the proceedings to the Secretary or the Panel for such further action as it may direct.
 30 U.S.C. § 816(b) (1970).
 
 
 [7]
 See Lucas Coal Co. v. Interior Bd. of Mine Operations Appeals, 522 F.2d 581 (3d Cir. 1975) (reviewing notice of violation); Freeman Coal Mining Co. v. Interior Bd. of Mine Operations Appeals, 504 F.2d 741 (7th Cir. 1974) (reviewing withdrawal order); Eastern Assoc. Coal Corp. v. Interior Bd. of Mine Operations Appeals, 491 F.2d 277 (4th Cir. 1974) (reviewing withdrawal order)
 
 
 [8]
 Bituminous Coal Operators' Assn., Inc. v. Secretary of Interior, 547 F.2d 240, 243 (4th Cir. 1977). As Judge MacKinnon notes, this Fourth Circuit case is closely related to the instant appeal. There the Fourth Circuit observed, in an opinion by Judge Butzner:
 The complaint alleges that jurisdiction is founded on 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act), and 5 U.S.C. § 551 Et seq. (Administrative Procedure Act). On appeal, the Secretary questioned for the first time the district court's jurisdiction, contending that orders of the Secretary are reviewable only by a court of appeals, pursuant to 30 U.S.C. § 816(a).
 While a literal reading of § 816(a) supports the Secretary, it is apparent, from the context of this section, that The review by the courts of appeals to which it refers deals with citations issued by inspectors and adjudicated by the Board of Mine Operations Appeals.
 (Emphasis added.)
 Judge Butzner goes on to observe:
 Because the Act neither states nor implies that § 816(a) furnishes the exclusive procedure for obtaining judicial review, other procedures are not precluded. Consequently, the Administrative Procedure Act is applicable, and the Secretary's order is reviewable.
 I think that Congress did intend by the plain language of § 816 to make it the exclusive means for judicial review of all issues of law or fact that could have been addressed in a § 816 review.
 
 
 [9]
 30 U.S.C. § 811(a) (1970) provides that the Secretary of Interior shall promulgate health and safety standards. Proposed standards are to be published in the Federal Register and the Secretary shall then receive written data or comments for at least a 30-day period. Id. § 811(e). If formal objections are filed, the Secretary of the Interior, in the case of mandatory safety standards, and the Secretary of HEW, in the case of mandatory health standards, are to issue notice of a public hearing, after which the appropriate Secretary is to make public his findings of fact. Id. § 811(g). Since review under § 816(a) is predicated on exhaustion of administrative remedies, the court of appeals would have the benefit of a record developed through a public hearing
 
 
 [10]
 In Reliable Coal Corp. v. Morton, 478 F.2d 257 (4th Cir. 1973), the court reviewed under § 816 a decision of the Interior Board of Mine Operations Appeals affirming the denial of Reliable Coal Company's petitions to modify certain interim mandatory safety standards contained in 30 U.S.C. §§ 863(d)(1), (L ) (1970). "These provisions were designed to prescribe immediate mandatory standards without undergoing the lengthy administrative process for the promulgation of such standards by the Secretary under (§ 811)." 478 F.2d at 262. It stands to reason that if the Act contemplates review under § 816 of the applicability of interim standards to discrete situations, it also contemplates such review of general standards promulgated under § 811
 
 
 [11]
 The Interim Compliance Panel was established by 30 U.S.C. § 804 (1970). Section 804(f)(1) provides:
 It shall be the function of the Panel to carry out the duties imposed on it pursuant to this chapter and to provide an opportunity for a public hearing, after notice, at the request of an operator of the affected coal mine or the representative of the miners of such mine. Any operator or representative of miners aggrieved by a final decision of the Panel may file a petition for review of such decision under section 816 of this title. The provisions of this section shall terminate upon completion of the Panel's functions as set forth under this chapter. Any hearing held pursuant to this subsection shall be of record and the Panel shall make findings of fact and shall issue a written decision incorporating its findings therein in accordance with section 554 of Title 5.
 
 
 [12]
 See Hess & Clark, Div. of Rhodia, Inc. v. FDA, 161 U.S.App.D.C. 395, 495 F.2d 975 (1974); Marine Space Enclosures, Inc. v. FMC, 137 U.S.App.D.C. 9, 420 F.2d 577 (1969)
 
 
 [13]
 Id. at 393 n.3, 96 S.Ct. at 812. Compare Lucas Coal Co. v. Interior Bd. of Mine Operations Appeals, 522 F.2d 581, 586 (3d Cir. 1975) (fact of violation reviewable in district court in § 819(a)(4) proceeding) With Freeman Coal Mining Co. v. Interior Bd. of Mine Operations Appeals, 504 F.2d 741, 743 (7th Cir. 1974) (fact of violation not reviewable) And Eastern Assoc. Coal Corp. v. Interior Bd. of Mine Operations Appeals, 491 F.2d 277, 278 (4th Cir. 1974) (fact of violation not reviewable)