868 F.2d 1195
 1989 O.S.H.D. (CCH) P 28,447
 ASARCO, INC.-NORTHWESTERN MINING DEPARTMENT, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, and
Secretary of Labor, Mine Safety and Health
Administration, Respondents,
and
American Mining Congress, Amicus Curiae.
 No. 86-2765.
 United States Court of Appeals,
Tenth Circuit.
 March 3, 1989.
 
 Earl K. Madsen (K. Preston Oade, Jr. with him, on the briefs), of Bradley, Campbell & Carney, Golden, Colo., for petitioner.
 Jerald S. Feingold (George R. Salem, Sol. of Labor, Edward P. Clair, Acting Associate Sol., and Ann Rosenthal, Counsel, Appellate Litigation, with him, on the brief), U.S. Dept. of Labor, Office of the Sol., Arlington, Va., for Secretary of Labor, respondents.
 Charles W. Newcom of Sherman & Howard, Denver, Colo., and Edward M. Green and Henry Chajet, Washington, D.C., for amicus curiae American Mining Congress.
 Before HOLLOWAY, Chief Judge, BRIGHT, Eighth Circuit Judge*, and McWILLIAMS, Circuit Judge.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Asarco, Inc.--Northwestern Mining Department, a corporation, is the operator of the Black Cloud Mine near Leadville, Colorado. Black Cloud is an underground metal mine which primarily produces lead and zinc concentrates and also produces minor amounts of gold, silver, cadmium, and copper.
 
 
 2
 Alan Lysne, a miner employed by Asarco, sustained a broken foot when struck by falling rock as he was drilling in preparation for a blasting operation in stope 15-25-300[1] in the Black Cloud Mine. Based on that accident and the circumstances surrounding it, a mine inspector issued a citation charging Asarco with a violation of a mandatory safety standard then set forth in 30 C.F.R. Sec. 57.3-22 (1983),[2] and, in connection therewith, the inspector proposed a civil penalty of $119.00.
 
 
 3
 Asarco contested the citation. After an evidentiary hearing, an Administrative Law Judge held that Asarco had violated the relevant mandatory safety standard, but set the civil penalty at $25.00. The decision of the Administrative Law Judge is reported at 7 F.M.S.H.R.C. 1714 (Oct. 28, 1985).
 
 
 4
 Asarco then obtained review of the decision of the Administrative Law Judge by the Federal Mine Safety and Health Review Commission. The Review Commission, with one of its five commissioners dissenting, affirmed the Decision of the Administrative Law Judge. The Review Commission's Decision, including the dissent, is reported at 8 F.M.S.H.R.C. 1632 (Nov. 10, 1986) and 4 Mine Safety & Health Rep. (BNA) 1169 (Nov. 10, 1986).
 
 
 5
 Pursuant to 30 U.S.C. Sec. 816(a)(1), Asarco has filed in this court a petition for review of the Review Commission's Decision. We affirm that Decision.
 
 
 6
 This appeal concerns the Federal Mine Safety and Health Act of 1977 (the Mine Act), 30 U.S.C. Secs. 801-960, and the regulations promulgated pursuant thereto. The citation issued by the mine inspector to Asarco charged a violation of 30 C.F.R. Sec. 57.3-22 (1983). That regulation provided as follows:
 
 
 7
 Mandatory. Miners shall examine and test the back, face and ribs of their working places at the beginning of each shift and frequently thereafter. Supervisors shall examine the ground conditions during daily visits to insure that proper testing and ground control practices are being followed. Loose ground shall be taken down or adequately supported before any other work is done. Ground conditions along haulage ways and travelways shall be examined and scaled or supported as necessary (emphasis added).
 
 
 8
 The background facts are discussed in the reported decisions of the Administrative Law Judge and the Review Commission and are not disputed. Consequently such facts will not be repeated here in great detail. It is sufficient for our purposes to observe that the Review Commission found (1) that Asarco's miner, Alan Lysne, violated the mandatory safety standard set forth in 30 C.F.R. Sec. 57.3-22 (1983) by drilling without first examining and testing the face of stope 15-25-300 and removing loose rock, and (2) that Asarco's supervisory employees were not at fault since they had repeatedly instructed Lysne to remove loose rock before drilling. Indeed, the Review Commission found that the supervisory employees had specifically instructed Lysne to remove the loose rock on the very occasion when he broke his foot.
 
 
 9
 These factual findings of the Commission, not contested by either party, are our starting point. Based upon these findings, Asarco argues here, as it did before the Review Commission, that when its supervisory employees adequately trained and instructed Lysne that there should be no drilling without first removing loose rock, Asarco had taken all actions necessary to meet the duty of care mandated by the statute. In other words, when Lysne by his "unpredictable and idiosyncratic misconduct" violated the supervisory employee's specific instructions, Asarco, the corporation, cannot be held to have violated the Mine Act. The Mine Act, argues Asarco, does not mandate a civil penalty where the operator, or more accurately the operator's supervisory employees, are without fault. Stated only slightly differently, Asarco argues, in effect, that the lack of fault on the part of its supervisory employees should be imputed to it, but that the violation of the mandatory safety standard by another of its employees, Lysne, the miner, should not.
 
 
 10
 The Review Commission takes a different stance. In their view, once it was determined that Lynse, a miner employed by Asarco, violated a mandatory safety standard in Asarco's Black Cloud Mine, Asarco, under the Mine Act, was subject to a civil penalty of not more than $10,000.00, and that the fact that Asarco's supervising employees were not at fault was not a defense to the citation. However, such a lack of fault could be, and was, considered in assessing a civil penalty of only $25.00. Our study of the matter leads us to conclude that the Review Commission properly interpreted and applied the Mine Act.
 
 
 11
 Both parties agree that under the predecessor Federal Coal Mine Health and Safety Act of 1969 (the Coal Act), 30 U.S.C. Sec. 819(a)(1) (1976),[3] there was so called "liability without fault" on the part of a coal mine operator when a miner violated a mandatory safety regulation in the mine. It is the Review Commission's belief that the 1977 Mine Act is a successor to the 1969 Coal Act, extending, to a considerable degree, the provisions of the 1969 Coal Act to other types of mines than coal mines. Asarco characterizes the Mine Act as a "break" from the concept of liability without fault found in the 1969 Coal Act, and, accordingly, it argues that the Mine Act does not permit liability without fault on the part of the operator.
 
 
 12
 The resolution of these conflicting positions requires a close reading of the relevant statutory provisions. Section 110(a) of the Mine Act, 30 U.S.C. Sec. 820(a) reads as follows:
 
 
 13
 The operator of a coal or other mine in which a violation occurs of a mandatory health or safety standard or who violates any other provision of this chapter shall be assessed a civil penalty by the Secretary which penalty shall not be more than $10,000 for each such violation. Each occurrence of a violation of a mandatory health or safety standard may constitute a separate offense (brackets added).
 
 
 14
 To us the plain meaning of the first part of Section 110(a) is that when a violation of a mandatory safety standard occurs in a mine, the operator is automatically assessed a civil penalty. When a violation occurs, a penalty follows. The statute says nothing which would indicate that if the operator's supervisory employees are without fault, the citation should be dismissed.
 
 
 15
 Our reading of Section 110(a) is supported by the provisions of Section 110(i), 30 U.S.C. Sec. 820(i), which states that in assessing civil monetary penalties, the Commission shall consider, inter alia, "whether the operator was negligent, ..." (emphasis added). This language suggests, and strongly so, that an operator may be assessed a civil penalty under Section 110(a) even though its supervisory employees are not negligent, and that the lack of negligence is merely a factor to be considered in setting the amount of the civil penalty.
 
 
 16
 Opinions from other circuits support our reading of the Mine Act. See Sewell Coal Company v. Federal Mine Safety & Health Review Commission, 686 F.2d 1066 (4th Cir.1982) and Allied Products v. Federal Mine Safety and Health Review Commission, 666 F.2d 890 (5th Cir.1982).
 
 
 17
 In Sewell, a coal mine operator was cited for violations of safety standards in its mine. Sewell's defense was impossibility of compliance with the standards in question because of a strike which left it short handed of employees. The Fourth Circuit held that the Review Commission was correct in holding that the operator had not established that compliance was in fact impossible. In so holding, the Fourth Circuit commented on 30 U.S.C. Sec. 820(a) as follows:
 
 
 18
 The legislative history of the predecessor to this section in the 1969 [Coal] Act discloses that it was intended to provide for liability for violation of the standards against the operator, without regard to fault....
 
 
 19
 Although an operator may be liable without fault, the question of negligence is not eliminated from the administration of the [Mine] Act. Section 820(i) (Supp. III 1979) provides that a consideration in assessing the amount of the penalty is "whether the operator was negligent."
 
 
 20
 686 F.2d at 1071.
 
 
 21
 In Applied Products, the Fifth Circuit held that under 30 U.S.C. Sec. 820(a) a violation of a safety standard by any employee is sufficient for assessment of a civil penalty against a mine operator. In other words, the fact of the violation triggers a penalty, and "there is no basis for reading a fault standard into the statute." 666 F.2d at 893.[4]
 
 
 22
 Asarco argues that 30 U.S.C. Sec. 814(a) has more present pertinency than 30 U.S.C. Sec. 820(a) and (i). We disagree. Section 814(a) merely provides that if upon inspection or investigation the Secretary believes that an "operator of a ... mine ... has violated this chapter ... he shall ... issue a citation to the operator." That language does not delineate the nature or scope of the operator's responsibility. Rather, it merely isolates one instance where liability may be imposed. This same argument was considered, and rejected, by the Fifth Circuit in Sewell. The operator in Sewell argued that under Sec. 814(a) citations against an operator could only be issued when the "operator affirmatively commits a violation." 686 F.2d at 1071. The Fourth Circuit rejected this interpretation of Sec. 814(a), which interpretation, according to the Fourth Circuit, "would require proof of negligence," which is not required under Sec. 820(a). Id. We agree with the Fourth Circuit's analysis, and, accordingly, hold that Sec. 820(a) imposes liability for any violation, regardless of whether or not the operator was affirmatively at fault.
 
 
 23
 Asarco also argues that "liability without fault" is not permitted under the Occupational Safety and Health Act, and that the Mine Act should be interpreted in the same way.[5] This argument was considered and rejected by the Fifth Circuit in Allied Products. The Fifth Circuit stated that the Occupational Health and Safety Act is not "analogous" to the Mine Act, noting that "[m]ines are far more dangerous than the ordinary work place and it would make no sense to counter the [Mine] Act's plain language by analogy to the less strict Occupational Safety and Health standard." 666 F.2d at 894.[6] We agree.
 
 
 24
 In construing and applying a statute, "the primary dispositive source of information is the wording of the statute itself." Association of Bituminous Contractors v. Andrus, 581 F.2d 853, 861 (D.C.Cir.1978) (construing 30 U.S.C. Sec. 819(a)(1)). We believe 30 U.S.C. Sec. 820(a) and (i) clearly support the action of the Review Commission.
 
 
 25
 Decision affirmed.
 
 
 
 *
 Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 A "stope" is "[a]n excavation from which ore has been excavated in a series of steps." A Dictionary of Mining, Mineral, and Related Terms, United States Department of the Interior (1968) at 1081
 
 
 [2]
 The safety standard was substantially revised in December of 1986. 51 Fed.Reg. 36198 (1986). However, the regulation in effect at the time of the alleged violation is not in dispute on this appeal
 
 
 [3]
 The language of Sec. 819(a)(1) was as follows: "The operator of a coal mine in which a violation occurs of a mandatory health or safety standard or who violates any other provision of this Act shall be assessed a civil penalty...."
 
 
 [4]
 For other cases which support the position that Section 110(a) of the Mine Act imposes liability without fault, see Wilmot Mining Co. v. Secretary of Labor, 848 F.2d 195 (6th Cir.1988) (although negligence of supervisory employee could not be imputed to the operator for purposes of determining an appropriate penalty, the operator was liable for supervisor's negligence and subject to a penalty assessment) and International Union, U.M.W.A. v. F.M.S.H.R.C., 840 F.2d 77 (D.C.Cir.1988) (Mine Act Sec. 110(a) imposes liability without regard to operator's fault; Sec. 110(i) considers fault in determining amount of penalty). Asarco attempts to distinguish these cases on the grounds that they are clear cases of operator negligence which is not at issue in the present case. Asarco's position is incorrect for at least two reasons. First, the facts in Sewell and Allied Products are contrary to Asarco's position. Neither of these cases involves "supervisory negligence." Second, the clear language in all of the cited cases supports the proposition that liability should be imposed without regard to the supervisory employee's "fault" or lack thereof
 
 
 [5]
 For a discussion of the "unforeseeable employee misconduct defense" applied under OSHA, see Brennan v. OSHRC, 511 F.2d 1139 (9th Cir.1975); Penn Power & Light Co. v. OSHRC, 737 F.2d 350 (3d Cir.1984); National Realty & Constr. Co. v. OSHRC, 489 F.2d 1257 (D.C.Cir.1973)
 
 
 [6]
 The Fifth Circuit cited a Senate Report which indicated that in 1973 mine workers were approximately eight times more likely to die from work-related causes than workers covered under the Occupational Safety and Health Act. Allied Products, 666 F.2d at 894, n. 3 (citing S.Rep. No. 95-181, 95th Cong. 1st Sess. 6, 12, 30, 66, reprinted in [1977] U.S.Code Cong. and Admin. News 3401, 3406, 3412, 3430, 3465.)