**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 22 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WALKER STONE COMPANY, INC.,

Petitioner,

v.

THE SECRETARY OF LABOR;
FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION,

Respondent.

No. 97-9528

---

PETITION FOR REVIEW FROM THE
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION
(Petition No. 94-97-M)

---

Katherine Shand Larkin, of Jackson & Kelly, Denver, Colorado, (Keith R. Henry
of Weary, Davis, Henry, Struebing & Troup, Junction City, Kansas, with her on
the briefs), for Petitioner.

Jerald S. Feingold, of United States Department of Labor, Office of the Solicitor,
Arlington, Virginia, (J. Davitt McAteer, Acting Solicitor of Labor, Edward P.
Clair, Associate Solicitor, and W. Christian Schumann, Counsel, Appellate
Litigation, with him on the brief), for Respondent.

---

Before **SEYMOUR,** Chief Judge, **McWILLIAMS** and **MURPHY,** Circuit
Judges.

---

**MURPHY**, Circuit Judge.

---

Walker Stone Company, Inc. ("Walker Stone") appeals the assessment of a civil penalty under the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 *et seq*. This court exercises jurisdiction pursuant to 30 U.S.C. § 816(a)(1) and holds that breaking up rocks which are obstructing a crusher constitutes "repairs" or "maintenance" of machinery for purposes of 30 C.F.R. § 56.14105. This court affirms both the Federal Mine Safety and Health Review Commission's ("Commission") determination that Walker Stone violated § 56.14105 and the penalty assessed for that violation.

## BACKGROUND

The facts are generally undisputed. On June 25, 1993, the primary impact crusher at Walker Stone's Kansas Falls Plant became clogged by several large rocks, stalling the crusher's engine. Walker Stone employees, undertook to break up the rocks and remove them from the crusher. Initially, Dan Robert Boisclair and another employee went inside the crusher to dislodge a boulder by breaking it up with a sledgehammer. After they exited, the crusher operator, Roy Brooner, jogged the rotor by pressing the start button on the engine with the clutch still engaged to see whether the impeller would rotate. The crusher still was not operational.

-2-

After conferring with Brooner, employee Bill Scott then went below the impact rotor to check for additional rocks which could be causing the obstruction. While Scott was under the crusher, Boisclair climbed back inside the crusher to remove some smaller rocks with his hunting knife. Employee Frank Esterly knew that Boisclair had re-entered the crusher but did not inform Brooner. Scott told Esterly that he thought he had removed the rock causing the obstruction. Esterly warned Boisclair to hurry out of the crusher because Scott was almost finished. Before Boisclair was able to fully exit the crusher, however, Scott left the bottom of the crusher and told Brooner that he thought all was clear. Brooner again jogged the rotor. This time the impeller turned and Boisclair was caught between the impeller drum and the crusher wall, resulting in his death.

An investigation of the accident by the Mine Safety and Health Administration ("MSHA") led to the issuance of two citations for violations of mandatory safety standards promulgated by the Secretary of Labor ("Secretary") pursuant to the Federal Mine Safety and Health Act of 1977 ("Mine Act" or "Act"), 30 U.S.C. § 801 et seq.[1] The citation which is the subject of this appeal

---

[1] The Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 et seq., was enacted to improve work conditions in the nation's mines. See id. § 801. The Mine Act authorizes the Secretary of Labor to promulgate mandatory safety and health standards for the nation's mines and to conduct regular inspections of
(continued...)

was issued for a violation of a mandatory safety standard, 30 C.F.R. § 56.14105,[2]

which provides:

> Repairs or maintenance of machinery or equipment shall be performed only after the power is off, and the machinery or equipment blocked against hazardous motion. Machinery or equipment motion or activation is permitted to the extent that adjustments or testing cannot be performed without motion or activation, provided that persons are effectively protected from hazardous motion.

Walker Stone contested the citation and proposed penalty before an administrative law judge of the Federal Mine Safety and Health Review Commission. Following an evidentiary hearing, the administrative law judge vacated the citation on the ground that breaking up the rocks did not constitute

---

[1](...continued)
those mines. *See id.* §§ 811, 813. If, upon inspection or investigation, an authorized representative of the Secretary, such as a MSHA inspector, believes a mine operator has violated the Mine Act or a mandatory standard, the inspector must issue a citation or order. *See id.* § 814. A mine operator is subject to a civil penalty for each violation occurring at its mine. *See id.* § 820.

A citation may be contested before an administrative law judge of the Federal Mine Safety and Health Review Commission. *See id.* §§ 815, 823(d). Any party adversely affected by the administrative law judge's decision may file a petition for discretionary review with the Commission. *See id.* § 823(d)(2)(A)(i). Appeals from a decision of the Commission or from the decision of an administrative law judge, which the Commission has declined to review, are to the appropriate circuit court. *See id.* §§ 816, 823(d).

[2]A second citation, which is not a part of this appeal, was issued for a violation of 30 C.F.R. § 56.14200, which provides that "[b]efore starting crushers . . . equipment operators shall sound a warning that is audible above the surrounding noise level or use other effective means to warn all persons who could be exposed to a hazard from the equipment."

repairs to or maintenance of the crusher and therefore the mandatory safety standard, 30 C.F.R. § 56.14105, was inapplicable. *See Secretary of Labor v. Walker Stone Co.*, 17 F.M.S.H.R.C. 600, 604-05 (1995) [hereinafter *Walker Stone I*]. The judge noted that "[t]he only thing [employees] were actually working on were the rocks" and concluded that the safety standard "was written to apply to repair or maintenance evolutions, as those terms are commonly used and not [to] relatively minor annoyances that arise during the on-line production usage of the machinery or equipment, that do not involve any adjustments, maintenance or repairs to the equipment itself." *Id.* Because the administrative law judge held that the safety standard was inapplicable, he did not address whether Walker Stone violated the standard by failing to effectively protect its employees from hazardous motion.

The Commission reversed the administrative law judge's determination that the mandatory safety standard was inapplicable. *See Secretary of Labor v. Walker Stone Co.*, No. CENT 95-97-M, 1997 WL 47236, at *3-*4 (F.M.S.H.R.C. Jan. 31, 1997) [hereinafter *Walker Stone II*]. Relying on dictionary definitions of the words "repair" and "maintenance," the Commission held that the language of § 56.14105 "clearly and unambiguously reaches . . . the breakup and removal of rocks clogging [a] crusher." *Id.* at *3. The Commission reasoned that "the effect of removing the rock was to eliminate the malfunctioning condition and enable

-5-

the crusher to resume operation," and that the work was therefore "covered by the broad phrase 'repairs or maintenance of machinery or equipment.'" *Id.* The Commission further found that "the record as a whole supports no other conclusion" than that Walker Stone violated § 56.14105 by failing to protect Boisclair from the hazardous motion of the crusher and that the violation was significant and substantial ("S&S").[3] *Id.* at *4. The Commission remanded the case to the administrative law judge for assessment of a civil penalty. *See id.* at *5.

On remand, the administrative law judge assessed a $7500 civil penalty. *See Secretary of Labor v. Walker Stone Co.*, 19 F.M.S.H.R.C. 741, 744 (1997) [hereinafter *Walker Stone III*]. The Commission denied Walker Stone's petition for discretionary review of the administrative law judge's decision on remand. On appeal to this court, Walker Stone challenges both the Commission's determination that it violated 30 C.F.R. § 56.14105 and the administrative law judge's penalty assessment.

---

[3]The "S&S" terminology is taken from 30 U.S.C. § 814(d)(1), which distinguishes as more serious violations those that "could significantly and substantially contribute to the cause and effect of a . . . mine safety or health hazard."

**DISCUSSION**

**A. Applicability of 30 C.F.R. § 56.14105**

At the threshold, this court must determine whether the applicable safety regulation is either clear or ambiguous. When the meaning of a regulatory provision is clear on its face, the regulation must be enforced in accordance with its plain meaning. *See Exportal LTDA v. United States*, 902 F.2d 45, 50 (D.C. Cir. 1990); *Secretary of Labor v. AMAX Coal Co.*, 19 F.M.S.H.R.C. 470, 474 (1997). When a regulation is ambiguous, however, this court must give substantial deference to the interpretation given the regulation by the agency charged with its administration. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150-51 (1991); *Udall v. Tallman*, 380 U.S. 1, 16 (1965). An agency's interpretation of its own regulations will be given effect "so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Martin*, 499 U.S. at 150-51 (citation and internal quotations omitted).

The administrative law judge and the Commission both relied on their own respective perception of the plain language of the applicable regulation but reached opposite results. *Compare Walker Stone I*, 17 F.M.S.H.R.C. at 605 *with Walker Stone II*, 1997 WL 47236, at *3. The administrative law judge noted that the safety standard "speaks to 'repairs' to or 'maintenance' of the machinery or

equipment." *Walker Stone I*, 17 F.M.S.H.R.C. at 604. He concluded that because the employees were not performing work on the crusher itself, working instead on the rocks, breaking them up and removing them from the crusher, the safety standard was inapplicable. *See id.* at 604-05.

The Commission, on the other hand, agreed with the Secretary's interpretation of the regulation and held that the removal of rocks constituted repairs or maintenance of the crusher. *See Walker Stone II*, 1997 WL 47236, at *3. The Commission defined "repair" and "maintenance" as follows:

> The term "repair" means "to restore by replacing a part or putting together what is torn or broken: fix, mend . . . to restore to a sound or healthy state: renew, revivify . . . ." *Webster's Third New International Dictionary, Unabridged* 1923 (1986). The term "maintenance" has been defined as "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency: care, upkeep . . ." and "[p]roper care, repair, and keeping in good order." *Id*. at 1362; *A Dictionary of Mining, Mineral, and Related Terms* 675 (1968).

*Id.* (ellipses and alteration in original). Relying on those definitions, the Commission reasoned that "the obstructing rock caused the crusher's drive motor to stall, rendering the crusher defective or inoperable until the rock was removed" and therefore the "removal of rock was necessary to 'restore [the crusher] to a sound state' or 'keep [it] in a state of repair or efficiency.'" *Id.* (alterations in original). Because "the effect of removing the rock was to eliminate the malfunctioning condition and enable the crusher to resume operation," the

Commission concluded that "the removal of rock to restore the crusher to working condition is clearly covered by the broad phrase 'repairs or maintenance of machinery or equipment.'" *Id.*

Neither the administrative law judge's interpretation nor the contrary interpretation adopted by the Commission is either clearly required or clearly prohibited by the language of the regulatory safety standard. There is thus ambiguity inherent in the safety standard and this court defers to the Commission's interpretation of the standard so long as it is not plainly erroneous or inconsistent with the language of the standard.

Walker Stone's position is that the regulation is unambiguous and that its plain language is inapplicable to the removal of rocks from a crusher. Walker Stone thus implicitly challenges the reasonableness of the Commission's interpretation. Walker Stone first argues the Commission's path to its conclusion "was via dictionaries and general logic," rather than focusing on industrial realities. Walker Stone asserts that in the mining industry "breaking up *rocks* to unjam machinery or equipment is not regarded, recognized, or understood as 'repair' or 'maintenance' 'of' such 'machinery' or 'equipment.'"

Beyond relying on the administrative law judge's reasoning, however, Walker Stone cites no authority to support its assertion that the industrial meaning of repairs and maintenance does not include removing rocks to unplug a crusher

or that the industrial meaning of those terms differs from their everyday meaning. In the absence of authority indicating those terms have a different meaning in the context of mining, the Commission appropriately considered the plain meaning of those words as indicated by their dictionary definitions. *Cf. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993) (relying on dictionary definition for ordinary meaning of terms and noting courts properly assume words carry their ordinary, common meaning absent evidence to the contrary); *Indiana Mich. Power Co. v. Department of Energy*, 88 F.3d 1272, 1275 (D.C. Cir. 1996) (same). Further, in defining maintenance, the Commission actually relied on a dictionary specifically focused on the mining industry. *See Walker Stone II*, 1997 WL 47236, at *3. This court therefore rejects Walker Stone's argument that removal of rocks clogging a crusher plainly and unambiguously is not considered repair or maintenance in the mining industry. We further conclude that the interpretation of repair and maintenance by the Commission, which encompasses the removal of rocks clogging a crusher, is reasonable. *Cf. Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40, 48 (1989) (noting, in context of the Longshore and Harbor Workers' Compensation Act, that removal of coal which had spilled onto rollers and beneath conveyor belts was necessary to keep equipment from clogging and therefore such equipment cleaning "is a form of maintenance"). That interpretation is consistent with the

dictionary meanings of "repair" and "maintenance." *See Walker Stone II*, 1997 WL 47236, at *3.

Walker Stone also argues that because the work was actually being performed on the rocks rather than on the crusher, the work could not constitute "repairs or maintenance *of* machinery or equipment" under the plain meaning of those terms. Walker Stone maintains that the crusher was not damaged by the rocks and therefore the equipment itself was not in need of repair or maintenance. It is undisputed, however, that the rocks caused the crusher's engine to stall, rendering the crusher inoperable. Removal of the rocks was thus necessary to restore the crusher to an operative state. Merely because the required repair or maintenance involved physical work on the rocks plugging the crusher, rather than on the equipment itself, does not mean that the work did not constitute repair or maintenance *of* the crusher. The plain language of the regulation does not mandate such a narrow reading of the safety standard nor does it render the broader interpretation of the Commission unreasonable.

The Commission's interpretation of the standard is consistent with the safety promoting purposes of the Mine Act. *See Joy Techs., Inc. v. Secretary of Labor*, 99 F.3d 991, 996-97 (10th Cir. 1996) (interpreting regulation to further safety promoting purposes of the Mine Act and noting that the Mine Act should be liberally construed to accomplish its remedial purposes), *cert. denied*, 117 S.

Ct. 1691 (1997); *see also RNS Servs., Inc. v. Secretary of Labor*, 115 F.3d 182, 187 (3d Cir. 1997) (noting remedial legislation, such as the Mine Act, should be broadly construed to effectuate its purposes). In contrast, Walker Stone's interpretation of the regulation would lead to anomalous results, protecting workers who conduct regularly scheduled maintenance, such as putting oil in a crusher, but leaving unprotected workers performing more dangerous tasks, such as unclogging a crusher. Such results would defeat the safety promoting purposes of the regulation. *Cf. United Mine Workers of America v. FMSHRC*, 671 F.2d 615, 625-26 (D.C. Cir. 1982) (rejecting "paradoxical" interpretation of the Mine Act and noting that paradoxical purpose should not be imputed to Congress absent strong evidence of such intent); *Secretary of Labor v. Consolidation Coal Co.*, 15 F.M.S.H.R.C. 1555, 1557 (1993) (rejecting construction of mandatory standard that would create "absurd results").

Walker Stone additionally contends the Commission's interpretation of the safety standard conflicts with its own precedent. In *Secretary of Labor v. Southern Ohio Coal Co.*, 14 F.M.S.H.R.C. 978 (1992) [hereinafter *SOCCO*], the Commission considered whether Southern Ohio Coal Company ("SOCCO") violated a similar safety standard promulgated under the Mine Act. The standard provided that "[r]epairs or maintenance shall not be performed on machinery until the power is off and the machinery is blocked against motion, except where

machinery motion is necessary to make adjustments." 30 C.F.R. § 75.1725(c).

The question before the Commission was whether extending an underground

conveyor belt constituted maintenance for purposes of the standard. *See SOCCO*,

14 F.M.S.H.R.C. at 982. The Commission noted that "the belt move was not

designed to prevent the belt from lapsing from its existing condition or to keep

the belt in good repair but, rather, to increase its usefulness." *Id.* at 983.

Concluding that "SOCCO's miners were not engaged in the upkeep, preservation

or maintenance of the existing belt," the Commission held that the belt extension

did not constitute maintenance for purposes of the safety standard. *Id*.

Walker Stone argues that in the present case, the Secretary offered no

evidence that the condition of the crusher itself was deteriorating and thus the

work did not constitute maintenance as defined by *SOCCO*. The Commission,

however, persuasively distinguished its *SOCCO* opinion from the present case,

stating that, in contrast to the facts in *SOCCO*,

> the operation of the crusher had ceased due to a malfunction;
> removal of rock was necessary to restore the crusher to the same
> condition that it was in before it became clogged; the malfunctioning
> condition was being eliminated; the crusher would not operate
> without removal of rock; and removal of rock was necessary to
> restore the ability of the crusher to process material.

*Walker Stone II*, 1997 WL 47236, at *4. The Commission's interpretation of a

similar safety standard in *SOCCO* therefore does not conflict with their opinion in

the present case. Walker Stone's reliance on *SOCCO* for the proposition that the

language of the regulation clearly and unambiguously excludes the removal of

rocks is thus misplaced.[4]

---

[4]Walker Stone also contends the Commission's interpretation of 30 C.F.R. § 56.14105 conflicts with the administrative law judge's decision in *Secretary of Labor v. Lone Star Industries, Inc*., 12 F.M.S.H.R.C. 195 (1990). In *Lone Star Industries*, workers were installing grates in a clinker dust chamber, which they entered from the top via a ladder. At the bottom of the chamber were inspection doors. Just below the doors was the auger. Intending to take measurements, Lone Star Industries' engineer entered the chamber through one of those doors without de-energizing or locking out the screw conveyor. As he was climbing up the metal slide inside the chamber, he lost his footing and fell through the feed opening below the door he had entered. His leg got caught in the rotating screw conveyor and was severed mid-thigh. *See id.* at 197-98. The administrative law judge vacated a citation issued to Lone Star Industries for violating a regulation which forbids repairs or maintenance on machinery until the power is turned off and the machinery is blocked against motion. *See id.* at 201 & n.3, 202. The judge held that the safety regulation was inapplicable because "no repairs or maintenance were being performed on" the equipment which actually posed the hazard. *Id.* at 201. The judge concluded that taking measurements and installing grates "cannot be stretched to include a repair or maintenance of the screw auger." *Id*.

Walker Stone apparently argues that in the present case, its employees were not working on the piece of machinery which posed the hazard but were instead working on the rocks, and therefore under the reasoning of *Lone Star Industries*, the safety standard was inapplicable. This court has already rejected Walker Stone's argument that removal of rocks to unclog machinery does not constitute maintenance and repair *of* the machinery itself. While Walker Stone has not provided this court with sufficient information to fully compare repairs to a dust chamber with those to a crusher, *Lone Star Industries* appears to be factually distinguishable. In *Lone Star Industries*, the work was being performed on a different portion of the dust chamber than the portion which caused the injury. By contrast, in the present case, Walker Stone's employees were trying to remove rocks so that the impeller was free to rotate. Their work was thus aimed at unclogging the portion of the machinery which posed the hazard. We further note that an unreviewed decision of an administrative law judge is not binding precedent on the Commission. *See* 29 C.F.R. § 2700.72.

Finally, Walker Stone argues that even if this court concludes the language of the regulation is ambiguous, the Commission's interpretation must be rejected as plainly erroneous because it fails to apprise a reasonably prudent person of the conduct prohibited by the regulation. "In order to satisfy constitutional due process requirements, regulations must be sufficiently specific to give regulated parties adequate notice of the conduct they require or prohibit." *Freeman United Coal Mining Co. v. FMSHRC*, 108 F.3d 358, 362 (D.C. Cir. 1997); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). This court, however, recognizes that regulations cannot specifically address the infinite variety of situations which employees may face and that by requiring regulations to be too specific, we open loopholes, allowing conduct which the regulation is intended to address to remain unregulated. *See Freeman United Coal Mining Co.*, 108 F.3d at 362; *Ray Evers Welding Co. v. Occupational Safety & Health Review Comm'n*, 625 F.2d 726, 730 (6th Cir. 1980). "Accordingly, regulations will be found to satisfy due process so long as they are sufficiently specific that a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, would have fair warning of what the regulations require." *Freeman United Coal Mining Co.*, 108 F.3d at 362; *see also SOCCO*, 14 F.M.S.H.R.C. at 984; *cf. Utah Power & Light Co. v. Secretary of Labor*, 951 F.2d 292, 295 n.11 (10th Cir. 1991) (rejecting void-for-

vagueness argument under the Mine Act because meaning of mandate was "plainly intelligible to an experienced and capable mine management").

This court concludes that a person familiar with the mining industry would have fair warning that § 56.14105 applies to the removal of rocks clogging a crusher. As discussed above, the Commission's interpretation is reasonable in light of the dictionary definitions of "repair" and "maintenance." In this case, the rocks rendered the crusher inoperative and their removal was necessary to restore the crusher to a functioning state.

Further, even though the record does not itself contain evidence that the Secretary has consistently and historically interpreted the phrase "repairs or maintenance" to include the process of unjamming machinery, *Secretary of Labor v. Colorado Materials Company*, 9 F.M.S.H.R.C. 18 (1987), provides evidence that the Secretary has cited operators using this interpretation of "repairs or maintenance" since at least 1985. In *Colorado Materials Co.*, a Commission administrative law judge, in a factually analogous situation, upheld a citation for a violation of a predecessor safety standard, requiring machinery to be turned off and blocked against motion during "repairs or maintenance." *See id.* at 19, 22. The citation in *Colorado Material Co.* was issued in 1985 after a worker was crushed to death while attempting to dislodge rocks from the drum of a portable rock crusher. *See id.* at 18-19. A reasonably prudent person in the mining

industry would thus have notice that the removal of rocks clogging a crusher constitutes repairs or maintenance.[5]

We reject as untenable Walker Stone's contention that because a separate regulation, 30 C.F.R. § 56.14200, specifically requires equipment operators to sound a warning before starting a crusher, a reasonable person in the mining industry would not know that the conduct at issue in this case was also prohibited by § 56.14105. The two safety standards at issue impose separate requirements. One requires an audible warning before starting a crusher; the other requires effective protection from hazardous motion during repairs and maintenance. *See* 30 C.F.R. §§ 56.14200, 56.14105. Both were applicable to the conduct at issue in this case.

Having concluded both that the Commission's interpretation of 30 C.F.R. § 56.14105 is reasonable and that the regulation provides adequate notice of the conduct prohibited, this court upholds the interpretation adopted by the Commission. The regulation is thus applicable to the removal of rocks obstructing a crusher.

_____

[5]Walker Stone's reliance on *Phelps Dodge Corp. v. FMSHRC*, 681 F.2d 1189 (9th Cir. 1982) in support of its argument that the regulation did not provide adequate notice is misplaced. In *Phelps Dodge*, the court held the relevant safety standard was aimed at preventing electrical shock and therefore did not provide adequate notice that it covered maintenance to a non-electrical portion of the equipment. *See id.* at 1192-93. By contrast, the safety standard in this case was designed to prevent the very type of injury which led to Mr. Boisclair's death.

**B. Violation of 30 C.F.R. § 56.14105**

Walker Stone also challenges the Commission's determination that it actually violated the regulatory safety standard. Activation of the crusher was necessary to test whether the rocks creating the problem had been removed. Such activation is permitted under the safety standard so long as employees are "effectively protected from hazardous motion." 30 C.F.R. § 56.14105. In determining that Walker Stone had violated the safety standard, the Commission stated:

> Walker [Stone] does not dispute that the crusher operator failed to accurately account for all employees present before he jogged the rotor and, therefore, that Boisclair was unprotected from hazardous movement of the crusher machinery. Thus, we conclude that the record as a whole supports no other conclusion than that the Secretary established a violation of section 56.14105. In addition, we conclude that the violation was S&S. Clearly, it was a significant contributing cause to the fatal accident. Because the record as a whole allows only one conclusion, we need not remand the issues of violation and S&S to the judge.

*Walker II*, 1997 WL 47236, at *4 (footnotes omitted). This court upholds the Commission's findings of fact if they are "supported by substantial evidence on the record considered as a whole." 30 U.S.C. § 816(a)(1); *see also Chaney Creek Coal Corp. v. FMSHRC*, 866 F.2d 1424, 1431 (D.C. Cir. 1989). We reject legally erroneous conclusions. *See Donovan ex rel. Anderson v. Stafford Constr. Co.*, 732 F.2d 954, 958 (D.C. Cir. 1984).

-18-

Walker Stone argues that the Commission failed to adequately define "effective protection" and instead "reasoned that because Boisclair was fatally injured, that ipso facto established lack of effective protection." Walker Stone notes that the standard does not specify how effective protection is to be provided, nor does it require all employees be physically accounted for in order to provide effective protection. Walker Stone also asserts that Boisclair violated company policies which provided effective protection from hazardous motion. Based on their interviews with Walker Stone's employees, both MSHA inspectors testified that it appeared company policy prohibited an employee from working above another employee when the employee below may be endangered by falling materials and that Boisclair's actions violated this policy. Walker Stone argues that policy, along with its policy that workers should not enter confined spaces without notifying someone, together constitute effective means of protecting workers from hazardous motion. It contends it should not be liable for Boisclair's unforeseeable disregard of these policies.

Walker Stone's position is necessarily premised on a departure from the well-established principle that an employer is liable for the acts of its employees without regard to the employer's fault. *See Secretary of Labor v. Ideal Cement Co.*, 13 F.M.S.H.R.C. 1346, 1351 (1991) ("Under the liability scheme of the Mine Act, an operator is liable for the violative conduct of its employees, regardless of

whether the operator itself was without fault and notwithstanding the existence of significant employee misconduct."); *see also Asarco, Inc.-Northwestern Mining Dept. v. FMSHRC*, 868 F.2d 1195, 1197-99 (10th Cir. 1989) (holding Mine Act imposes liability without regard to operator's fault); *Miller Mining Co. v. FMSHRC*, 713 F.2d 487, 491 (9th Cir. 1983) (same); *Sewell Coal Co. v. FMSHRC*, 686 F.2d 1066, 1071 (4th Cir. 1982) (same); *Allied Prods Co. v. FMSHRC*, 666 F.2d 890, 893-94 (5th Cir. Unit B 1982) (same).  Walker Stone has not presented any reason for this court to depart from this principle.

Even assuming an employer could effectively protect workers from hazardous motion through the adoption of protective company policies alone, such policies have significance only if followed.  An employer does not avoid liability under the regulatory safety standard merely because it has adopted protective policies.  In this case, the policies Walker Stone relies on as effective protection were not followed.  As a result, Boisclair was not effectively protected from the hazardous motion of the crusher.  The Commission therefore appropriately found there was a violation of the safety standard.[6]

---

[6]This court also rejects Walker Stone's contention that the Commission erred in not remanding to the administrative law judge the question of whether it provided effective protections as required by the regulation.  The essential facts were not in dispute.  It was therefore not necessary that the Commission remand the case.  The Commission properly determined that "the record as a whole allow[ed] only one conclusion."  *Walker Stone II*, 1997 WL 47236, at *4; *see*

(continued...)

## C. Penalty Assessed

Finally, Walker Stone challenges the amount of the penalty assessed by the administrative law judge on remand. In assessing civil monetary penalties pursuant to the Mine Act, a Commission administrative law judge is required to consider the following six criteria:

> the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation.

30 U.S.C. § 820(i). Walker Stone argues the judge erred by finding that it was negligent and, consequently, the penalty assessed must be reduced.

As noted by the Commission, administrative law judges are accorded broad discretion is assessing civil penalties under the Mine Act. *See Secretary of Labor v. Ambrosia Coal & Constr. Co.*, 18 F.M.S.H.R.C. 1552, 1564 (1996). Their discretion, however, is not unbounded; penalties assessed under the Mine Act must reflect proper consideration of the criteria set forth in the Act. *See id.* A penalty assessment which is not supported by substantial evidence or which is

---

[6](...continued)
*Donovan ex rel. Anderson v. Stafford Constr. Co.*, 732 F.2d 954, 961 (D.C. Cir. 1984) (noting remand would serve no purpose when all evidence bearing upon issue was contained in record and record would support only one conclusion); *Secretary of Labor v. American Mine Servs., Inc.*, 15 F.M.S.H.R.C. 1830, 1834 (1993) (same).

legally erroneous must be reversed on appeal. *See* 30 U.S.C. § 816(a)(1);

*Ambrosia Coal & Const. Co.*, 18 F.M.S.H.R.C. at 1564.

Of the six penalty criteria in the Mine Act, Walker Stone challenges only the administrative law judge's analysis of the negligence criterion. The administrative law judge found that had Boisclair followed internal company policies, the accident would not have occurred. *See Walker III*, 19 F.M.S.H.R.C. at 744. Walker Stone argues the judge impermissibly imputed Boisclair's negligence to Walker Stone for penalty assessment purposes.

In *Secretary of Labor v. Southern Ohio Coal Co.*, 4 F.M.S.H.R.C. 1458, 1464 (1982), the Commission held that a rank-and-file employee's negligence may not be directly imputed to a mine operator for penalty assessment purposes. Instead, in assessing the level of negligence attributable to an operator when a rank-and-file employee is responsible for a violation of the Mine Act, "the operator's supervision, training and disciplining of its employees must be examined to determine if the operator has taken reasonable steps to prevent the rank-and-file miner's violative conduct." *Id*. Within this legal framework, the appropriate inquiry is not whether the steps taken by the operator were necessarily optimal, but whether they were adequate. *See id.* at 1465.

Walker Stone contends there is not substantial evidence to support the administrative law judge's implicit finding that its internal policies were not

sufficient to ensure its employees' safety. Walker Stone asserts that the record shows "the company's policies were to the point; were well-known by affected employees; covered the conduct that occurred; were simple, direct, and easy-to-understand; and were enforced through appropriate communication to employees." Walker Stone argues that to the extent the judge second-guessed the effectiveness of its policies, his decision was improper because it exceeded the appropriate bounds of review. Walker Stone further asserts the judge's conclusion of negligence "erroneously rests on the premise that because Walker Stone violated the standard, ipso facto, it was negligent."

The administrative law judge found that Walker Stone "failed to exhibit the care required by the circumstances." *Walker III*, 19 F.M.S.H.R.C. at 744. The judge, however, also found that Walker Stone's "negligence was mitigated, at least in part, by the fact that Boisclair . . . put himself in harm's way" by violating company directives. *Id.* The administrative law judge's recognition that Walker Stone's negligence was mitigated by Boisclair's action is evidence that the judge did not improperly impute Boisclair's negligence to the operator. Instead, the judge found that Walker Stone itself was also negligent in failing to provide adequate protection.

Contrary to Walker Stone's assertions, substantial evidence supports the administrative law judge's conclusion that it was negligent. The only evidence in

the record to support Walker Stone's contention that it provided effective protection are the policies it references. None of these policies were written. Further, the policy which is most clearly substantiated by the record, the policy of not working above another individual, is designed primarily to protect persons from falling objects, not to prevent the injury which occurred in this case. It is undisputed that the crusher operator did not sound a warning or accurately account for all the employees who were assisting in unclogging the crusher before he jogged the rotor, nor was there evidence of a company policy requiring the crusher operator to take such precautions. Walker Stone points to no other evidence indicating that additional safeguards were taken to protect workers from hazardous motion. One of the MSHA inspectors testified that "the company itself did not take or place enough emphasis on job safety analysis." The inspector further testified that Walker Stone had no written policy on starting the crusher. There is thus substantial evidence to support the judge's negligence finding.

Based on the record, this court cannot say the administrative law judge's conclusion that Walker Stone took inadequate steps to effectively protect its employees is legally erroneous, especially in light of operators' "primary responsibility" under the Mine Act to prevent the existence of unsafe conditions and practices in their mines. 30 U.S.C. § 801(e). This court therefore affirms the penalty assessed.

**CONCLUSION**

For the foregoing reasons, the decision of the Commission and the penalty assessed by the administrative law judge are **AFFIRMED**.