**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TIERDAEL CONSTRUCTION
COMPANY,

Petitioner,

v.

OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION,

Respondent.

- - - - - - - - - - - - - - - - - - - -

ASSOCIATED GENERAL
CONTRACTORS OF AMERICA,
INC., COLORADO CONTRACTORS
ASSOCIATION, INC., and
NATIONAL UTILITY
CONTRACTORS ASSOCIATION,

Amici Curiae.

No. 02-9532

---

Petition for Review of an Order from the Occupational Safety
and Health Review Commission
(No. 01-0261)

James J. Gonzales, Holland & Hart, LLP, Denver, Colorado, for Petitioner.

Ellen L. Beard, Senior Appellate Attorney, U.S. Department of Labor (Eugene Scalia, Solicitor of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, Nathaniel I. Spiller, Deputy Associate Solicitor, with her on the brief), Washington, D.C., for Secretary of Labor, Respondent.

Peter R. Nadel, Gorsuch, Kirgis, LLP, Denver, Colorado, filed an amici curiae brief on behalf of Associated General Contractors of America, Inc., Colorado Contractors Association, Inc. and National Utility Contractors Association, in support of Petitioner.

---

Before **HENRY**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    INTRODUCTION

Tierdael Construction Company ("Tierdael") was issued a citation alleging several serious violations of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, after an inspection of their work site by a compliance officer from the Occupational Safety and Health Administration ("OSHA"). Tierdael appealed the citation to the Occupational Safety and Health Review Commission (the "Commission"). A four-day hearing was held before a Commission administrative law judge ("ALJ"). In his decision and order, the ALJ vacated four violations, affirmed four violations as other-than-serious, affirmed three

violations as *de minimis*, and assessed penalties totaling $1,800.00. The decision of the ALJ became the final order of the Commission. Exercising jurisdiction pursuant to 29 U.S.C. § 660(a), this court denies Tierdael's petition for review, concluding that the plain and natural meaning of the regulation encompasses Tierdael's activity. Alternatively, OSHA's interpretation of 29 C.F.R. § 1926.1101 (the "OSHA Asbestos Standard") that Tierdael's activity falls within the definition of Class II asbestos work and that Tierdael was required to comply with the requirements of the OSHA Asbestos Standard is entitled to deference.

## II. BACKGROUND

On October 30, 2000, two Tierdael employees removed asbestos-containing cement pipe from an excavation trench located in the middle of a street intersection in a residential neighborhood in Littleton, Colorado. In order to remove the pipe, one of the employees used a two-pound hammer to break the pipe while the other employee sprayed the pipe. The pipe remained intact, in that it did not crumble or become pulverized. The pipe was then lifted out of the trench with a sling and backhoe.

In response to a complaint about Tierdael's removal of the asbestos-containing pipe, an OSHA compliance officer went to the construction site. After conducting an inspection, OSHA, acting under the authority of the Secretary of Labor (the "Secretary"), issued a citation alleging the following violations, which

-3-

were classified as "serious": (1) failure to provide sufficient protection for the excavation in violation of 29 C.F.R. § 1926.651(j)(2); (2) failure to provide a regulated area for the Class II asbestos work in violation of 29 C.F.R. § 1926.1101(e)(1); (3) failure to conduct exposure monitoring in violation of 29 C.F.R. § 1926.1101(f)(1)(i); (4) failure to use required engineering controls and work practices, including wetting methods, a HEPA vacuum, and proper disposal methods, in violation of 29 C.F.R. § 1926.1101(g)(1); (5) failure to have a competent person supervise the Class II asbestos work in violation of 29 C.F.R. § 1926.1101(g)(7)(i); (6) failure to use work practices and controls for removal, including wetting, keeping the material intact during removal, and bagging and wrapping the material, in violation of 29 C.F.R. § 1926.1101(g)(8); (7) failure to provide respirators in violation of 29 C.F.R. § 1926.1101(h)(1); (8) failure to provide protective clothing in violation of 29 C.F.R. § 1926.1101(i)(1); (9) failure to establish an equipment room or area for decontamination of employees and their equipment in violation of 29 C.F.R. § 1926.1101(j)(2)(i); (10) failure to affix labels onto the water pipe or the bagged transite piping in violation of 29 C.F.R. § 1926.1101(k)(8)(i); and (11) failure to provide training to the employees exposed to the cement pipe in violation of 29 C.F.R. § 1926.1101(k)(9)(iv)(C).

Tierdael contested the citations and a four-day hearing was conducted before a Commission ALJ. At the hearing, Leary Jones, Tierdael's risk manager

-4-

and controlling official at the work site on October 30, 2000, testified that the OSHA Asbestos Standard generally applied to Tierdael's work activities. He also testified that the pipe breakage and removal from the excavation constituted Class II asbestos work. He further stated that he believed the OSHA Asbestos Standard did not apply since Tierdael's construction activity did not meet or exceed the permissible exposure limit ("PEL") for asbestos. Jones testified that industry data revealed that the asbestos PEL is not exceeded when pipe is removed from an excavation. Moreover, Jones testified that Tierdael concluded that it had complied with the OSHA Asbestos Standard because an October 4, 1995 letter written by Western Environment and Ecology, Inc. ("Western"), which stated that the results of air monitoring conducted at a previous pipe removal construction project "were below current OSHA exposure standards," constituted objective data for a negative exposure assessment. Although the letter was the basis for Tierdael's "Asbestos Action Plan," Jones acknowledged that he did not have the 1995 letter with him at the work site and could not say whether the letter was reviewed prior to the work being performed.

Greg Sherman of Western also testified that the 1995 letter constituted objective data for a negative exposure assessment. He testified, however, that the method for removal examined by Western in 1995 was not the use of a hammer to break the pipe, a method Western would not recommend. Although Sherman

testified that typically pipe removal is Class II asbestos work, he concluded that the pipe removal on October 30, 2000 was not Class II removal because no structure was attached to the pipe. In addition, Tierdael's expert similarly testified that the OSHA regulations did not apply because the pipe removal was not a Class II activity since the pipe was not a structure, substrate, or building component.

Daniel Crane of OSHA testified that Tierdael's construction activity was Class II removal. He testified that a pipeline was considered a structure and that a substrate is something in the ground which is not necessarily connected to a building. Crane further testified that asbestos-containing cement pipe is a building component. He stated that exposure is not always a necessary part of the regulations and that the OSHA Asbestos Standard requires compliance with some removal methods regardless of a negative exposure assessment.

The ALJ ruled, consistent with OSHA's interpretation, that Tierdael removed the pipe from the Littleton water delivery system, which was a structure. The ALJ then concluded that under the plain meaning of the regulation, Tierdael's activity was Class II asbestos work.

The ALJ vacated the violations of failure to provide sufficient protection for the excavation, failure to require engineering controls and work practice of wetting methods and proper disposal, failure to use work practices and controls

for removal, and failure to provide training. The ALJ affirmed the violations of failure to provide a regulated area, failure to use required engineering controls and work practices of a HEPA vacuum, failure to have a competent person supervise, and failure to affix labels but reduced the classification of the violations to "other-than-serious." The ALJ also affirmed violations of failure to conduct exposure monitoring, failure to provide respirators, failure to provide protective clothing, and failure to establish an equipment room, but reduced the classification of the violations from "serious" to "*de minimis*." The ALJ assessed a penalty of $1,800.00.

Tierdael filed a petition for discretionary review with the Commission, appealing the ALJ's order. The Commission declined review. Thus, the ALJ's decision and order became the final order of the Commission.

Tierdael petitions this court for review from the Commission's order, claiming Tierdael's construction activity did not constitute Class II asbestos removal subject to the requirements of 29 C.F.R. § 1926.1101; there was no likely or actual exposure to asbestos because the pipe remained intact; and objective data established a negative exposure assessment, rendering the OSHA Asbestos Standard's requirements moot. Tierdael also asserts that the ALJ's decision and the Secretary's interpretation of the OSHA Asbestos Standard denies due process.

## III. STANDARD OF REVIEW

This court reviews the Commission's findings of fact under a substantial evidence standard upon consideration of the record as a whole. 29 U.S.C. § 660(a). The Commission's conclusions of law are reviewed "to determine if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." *Universal Constr. Co. v. Occupational Safety & Health Review Comm'n*, 182 F.3d 726, 732 (10th Cir. 1999). This court's review is narrow and highly deferential to OSHA and the Secretary. *Id.* That deferential standard applies even when the Commission does not receive evidence but instead adopts an ALJ's findings. *See Modern Cont'l Constr. Co. v. Occupational Safety & Health Review Comm'n*, 305 F.3d 43, 49 (1st Cir. 2002).

## IV. DISCUSSION

### A. Class II Asbestos Work

Tierdael first contends that the company did not engage in Class II asbestos removal work within the meaning of 29 C.F.R. § 1926.1101. To determine whether the OSHA Asbestos Standard is applicable, this court must first determine whether the regulation is clear or ambiguous. *See Walker Stone Co., Inc. v. Sec'y of Labor*, 156 F.3d 1076, 1080 (10th Cir. 1998). "When the meaning of a regulatory provision is clear on its face, the regulation must be enforced in accordance with its plain meaning." *Id.* If the regulation is ambiguous, this court

-8-

must give substantial deference to the agency's interpretation of the regulation. *Id.*

Tierdael argues that the OSHA Asbestos Standard is unambiguous and that the plain language of the regulation does not encompass its October 30, 2000 pipe removal activity. Section 1926.1101 regulates asbestos exposure in all construction, alteration, and/or repair work. 29 C.F.R. § 1926.1101(a); *see also* 29 C.F.R. § 1910.12(b). The OSHA Asbestos Standard establishes four classifications for asbestos work, ranging from high risk Class I to low risk Class IV. 29 C.F.R. § 1926.1101(b). Class II asbestos work is defined as activity "involving the removal of [asbestos-containing material] which is not thermal system insulation or surfacing material." *Id.* Removal is further defined as "all operations where [asbestos-containing material] is taken out or stripped from structures or substrates, and includes demolition operations." *Id.*

Tierdael argues that its excavation work was not Class II asbestos work because the asbestos-containing pipe was not taken out or stripped from a structure or substrate since the removal took place from an excavated pipeline, not a building. On its face, the OSHA Asbestos Standard's definition of removal applies to Tierdael's activity on October 30, 2000. The plain and natural meaning of structure is "[s]omething made up of a number of parts that are held or put together in a particular way." *The American Heritage Dictionary of the English*

*Language* (4th ed. 2000). Tierdael removed a section of pipe which was part of a larger water pipeline system. This pipeline system is made up of a number of smaller sections of pipe. Accordingly, the overall pipeline system is a structure. Because the plain and natural meaning of structure[1] covers an underground pipeline, Tierdael's activity falls within the definition of Class II asbestos work.[2] Therefore, the ALJ's decision which upheld OSHA's interpretation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.[3]

---

[1]Because Tierdael's activity was an "operation[] where [asbestos-containing material] is taken out or stripped from structures," this court need not determine whether the pipeline also constituted a substrate. 29 C.F.R. § 1926.1101(b).

[2]Tierdael further argues that even if it engaged in Class II asbestos work, the OSHA Asbestos Standard requirements did not have to be complied with because there was no hazardous exposure since the pipe remained intact and undisturbed. However, compliance with the OSHA Asbestos Standard for Class II asbestos work does not rest upon whether there was hazardous exposure, i.e. exposure which exceeded the PEL, but on whether Class II activity occurs. *See* OSHA Directive CPL 2-2.63 (Revised) Inspection Procedures for Occupational Exposure to Asbestos Final Rule 29 CFR Parts 1910.1001, 1926.1101, and 1915.1001 (Nov. 3, 1995) (concluding that PEL compliance is the standard only when activity does not readily fall within one of the four classes); *see*, *e.g.*, 29 C.F.R. § 1926.1101(g)(1) (noting that certain engineering controls and work practices must be used in all operations regardless of the levels of exposure). Since Tierdael was engaged in Class II activity, Tierdael was required to comply with the OSHA regulation.

[3]Tierdael argues that the ALJ's decision is inconsistent with the preamble of the OSHA Asbestos Standard, prior asbestos practice, other OSHA directives, and EPA standards. These sources do not contain any guidance as to whether removal of absestos-containing cement pipe from an underground pipeline constitutes Class II activity. However, because the plain meaning of the

Even if the OSHA Asbestos Standard was ambiguous, this court gives substantial deference to OSHA's reasonable interpretation of 29 C.F.R. § 1926.1101. *Interstate Erectors, Inc. v. Occupational Safety & Health Review Comm'n*, 74 F.3d 223, 226 (10th Cir. 1996). When the meaning of regulatory language is ambiguous, OSHA's interpretation will be given effect so long as it is reasonable in that it "sensibly conforms to the purpose and wording of the regulations." *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150-51 (1991) (quotation omitted).

Tierdael challenges OSHA's definition of removal as inconsistent with the OSHA Asbestos Standard and its preamble, the history of asbestos remediation in buildings and structures, and parallel Environmental Protection Agency ("EPA") standards. However, OSHA's interpretation is consistent with the purpose of the Occupational Safety and Health Act of 1970, which is "to assure so far as possible . . . safe and healthful working conditions for every working man and woman in the Nation." *Id.* (quotation omitted). Tierdael's "Asbestos Action Plan" recognized the health risk associated with asbestos. This court simply cannot agree with Tierdael's suggestion, as presented by their expert, that the activity of breaking and removing the pipe even one inch outside of a building

_____

regulation encompasses Tierdael's activity, consulting secondary sources is not necessary. *See Martin v. Occupational Safety & Health Review Comm'n*, 941 F.2d 1051, 1056 (10th Cir. 1991).

would not require compliance with the OSHA Asbestos Standard simply because the activity would not be Class II work, because the hazards of dealing with and handling asbestos-containing matter would still be present. OSHA's interpretation that removal of pipe from structures that are not buildings constitutes Class II work promotes safe and healthy working conditions for employees subject to potential asbestos exposure. Furthermore, OSHA's interpretation is consistent with the language of the regulation. Therefore, the Commission's conclusion was not unreasonable or against the purpose of the OSHA Asbestos Standard. By concluding that Tierdael's removal of the pipe constituted Class II asbestos work, neither the Commission nor the ALJ abused its discretion, acted arbitrarily or capriciously, or failed to act in accordance with the law.

**B.    Negative Exposure Assessment**

Tierdael asserts that even if the activity constituted Class II asbestos work, it was not required to comply with the OSHA requirements because it conducted a negative exposure assessment. Section 1926.1101(f)(2) requires an employer engaged in construction activity to conduct an exposure assessment before or at the initiation of the activity "to ascertain expected exposures during [the] operation." In the alternative, employers may demonstrate that exposures will be below the PEL with objective data demonstrating that activity involving the

-12-

asbestos-containing material cannot release airborne fibers above concentrations established by OSHA under work conditions "having the greatest potential for releasing asbestos."[4]  29 C.F.R. § 1926.1101(f)(2)(iii)(A).

Tierdael claims that objective industry data, the preamble, and an OSHA compliance directive constitutes objective data supporting the negative exposure assessment.  For those violations which can be complied with by producing a negative exposure assessment,[5] the objective data must be comprised of sufficient information to conclude that the activity "will not result in fiber levels in excess of the PELs."  Occupational Exposure to Asbestos, 60 Fed. Reg. 33,974, 33,975 (June 29, 1995).  Specifically, the objective data should address whether concentrations above the PEL are unlikely under "foreseeable conditions."  *See*

---

[4]There are other regulatory means to demonstrate exposure below the PEL. Those, however, are not at issue.

[5]Despite its assertion to the contrary, a valid negative exposure assessment would only satisfy Tierdael's compliance with some of the regulatory requirements in the OSHA Asbestos Standard.  *Compare* 29 C.F.R. § 1926.1101(f) (requiring exposure assessment and monitoring unless a negative exposure assessment has been made); *id.* § 1926.1101(h)(1)(iv) (requiring respirators for Class II work if no negative exposure assessment has been made); *id.* § 1926.1101(i)(1) (mandating protective clothing if negative exposure assessment is not produced); and *id.* § 1926.1101(j)(2)(i) (requiring equipment room for Class II work where no negative exposure assessment is produced) *with* 29 C.F.R. § 1926.1101(e)(1) (stating that a regulated area is required for all Class II asbestos work); *id.* § 1926.1101(g)(1)(i) (requiring HEPA-filtered vacuums for all operations under the OSHA Asbestos Standard); *id.* § 1926.1101(g)(7)(i) (requiring all Class II work to be supervised by a competent person); and *id.* § 1926.1101(k)(8) (mandating use of labels for all asbestos-containing materials).

Occupational Exposure to Asbestos, 59 Fed. Reg. 40,964, 40,983 (Aug. 10, 1994) (preamble).

After consideration of the entire record, this court upholds the ALJ's conclusion that Tierdael's negative exposure assessment was deficient under the OSHA Asbestos Standard. Tierdael's risk manager testified that the assessment was based upon the 1995 Western letter and a determination that the OSHA regulations did not apply. OSHA's regulations and preamble do not establish objective data because they do not contain the requisite basic statistical analysis which reflects "the results of many jobs and/or employees" under work conditions "having the greatest potential for releasing asbestos fibers." 60 Fed. Reg. at 33975. Neither the regulations nor the preamble specifically address the exposure level resulting from the removal of an asbestos-containing cement pipe from an excavation by breaking the pipe with a hammer. Additionally, the compliance directive references Class II roofing and flooring operations, which are not sufficiently similar to constitute objective data.

The 1995 Western letter is also insufficient objective data to constitute a negative exposure assessment. Sherman, a Western employee, testified that the process for removal used to collect the data for the 1995 Western letter differed from Tierdael's process in wetting method and breakage. At the hearing, Sherman testified that he did not recommend the use of a two-pound hammer to

break the pipe. Furthermore, although the jobs of other employers can form the basis for statistical data, the data used by Tierdael was only based on one similar job using somewhat different methods. *See* OSHA Directive CPL 2-2.63 (Revised) Inspection Procedures for Occupational Exposure to Asbestos Final Rule 29 CFR Parts 1910.1001, 1926.1101, and 1915.1001 (Nov. 3, 1995). Such data does not reflect analysis which consistently demonstrates that asbestos exposure levels fall below the permissible level. *See id.* Although Jones testified that he relied on his knowledge of industry studies which concluded that breaking asbestos-containing cement pipe did not result in exposure levels exceeding the PEL, as well as consultations with Western, in formulating Tierdael's Asbestos Action Plan, the studies relied upon were not maintained by Tierdael. In addition, Tierdael did not present any objective data when the OSHA compliance officer requested an exposure assessment; instead, Tierdael claimed that an exposure assessment was not required. Therefore, the negative exposure assessment was inadequate under the circumstances. Accordingly, the Commission did not abuse its discretion, act arbitrarily or capriciously, or fail to act in accordance with the law in concluding that the objective data was insufficient to support a negative exposure assessment in compliance with the OSHA Asbestos Standard.

## C.     Due Process Violation

Finally, Tierdael argues that its due process rights were violated because it did not receive adequate notice of a violation. As previously stated, OSHA's interpretation fits within the plain and ordinary language of the regulation. Tierdael, however, contended that it was not required to comply with the OSHA Asbestos Standard because the pipe was not removed from a building. Tierdael also assumed that they did not need to meet specific requirements in the OSHA Asbestos Standard because the asbestos exposure did not meet or exceed the PELs. Because the plain and ordinary meaning of structure would encompass a pipeline, there is no exclusion for work conducted outside of a building. Accordingly, Tierdael received adequate notice that its removal of the asbestos-containing pipe from the pipeline system on October 30, 2000 was Class II work.

Alternatively, even assuming the regulation could be considered ambiguous, OSHA's interpretation of the regulation remains entitled to deference even if the interpretation is advanced for the first time in an administrative adjudication. *Martin*, 499 U.S. at 158. The adequacy of notice, however, must be considered when an interpretation is announced during a proceeding. *Id.* After review of the record, this court concludes that even assuming the regulation was ambiguous, Tierdael had adequate notice that it was required to comply with the OSHA Asbestos Standard. Notably, Tierdael's risk manager acknowledged that

-16-

the OSHA Asbestos Standard generally applied to the work conducted by the company. During the hearing, he also stated that, based upon the definitions of the regulation, the activity performed on October 30, 2000 was Class II asbestos work. Although such testimony could be deemed inconsistent with his overall view that the pipe was not removed from a structure, the ALJ chose to credit his acknowledgement that the removal of pipe was Class II asbestos work. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (noting that an ALJ's credibility determinations are normally given deference). Moreover, Sherman, an expert and consultant in asbestos-containing materials, acknowledged that the pipe was Class II material and that the general removal of asbestos-containing pipe is Class II work. Accordingly, Tierdael was provided adequate notice that its construction activity constituted Class II asbestos work which required compliance with the OSHA Asbestos Standard.

Therefore, because Tierdael was adequately notified that its pipe removal activity required compliance with the OSHA Asbestos Standard, its due process rights were not violated.

## IV. CONCLUSION

Based upon the foregoing reasons, the petition for review is denied.