# CIRCUIT COURT OF THE CITY OF NORFOLK

C. Ray Davenport,
Commissioner of
Labor and Industry

v.

Waco, Inc.

March 2, 2006

Case No. (Chancery) 04-2108

BY JUDGE CHARLES E. POSTON

This matter is before the Court upon Waco, Inc.'s contest of several citations and proposed penalties issued by the Commissioner of Labor and Industry for violations of health and safety standards within the purview of Title 40.1 of the Code of Virginia. The Court's jurisdiction is founded upon Virginia Code § 40.1-49.4(E). The Court affirms the Commissioner's citations and proposed penalties for all the asbestos related citations and vacates the citation and proposed penalty for the first aid related violation.

*I. Facts*

On May 20, 2003, Norfolk Public Schools (NPS) invited contractors to bid on a project to install an electrical upgrade at Oceanair Elementary School and subsequently awarded the contract to Waco. Shortly thereafter, Waco assigned Gary Holloway as the project manager.

NPS and Waco held a preconstruction meeting at Oceanair Elementary with Gary Holloway, Stephen Smith (Capital Project Engineer for NPS), and

William Wood (the Director of Risk Management and Safety for NPS) in attendance. During the meeting, NPS provided an Asbestos Hazard Emergency Response Act (AHERA) plan to the Defendant. This plan included a summary of the presence, location, and quantity of all hazardous materials, including asbestos inside the school, but the plan did not reveal what, if any, asbestos was present outside the school. Moreover, Wood stated that he had not tested the roofing material on the school. He also advised Waco that, if their employees became concerned that a substance might be hazardous, they should contact NPS officials so that NPS could test any suspect material.

Work began on the site in July 2003. Pursuant to the contract, Waco laid new electrical lines through the suspended ceiling above the main hallways. Pipes ran through this space that were insulated with approximately 20% Chrysotile asbestos. Wood believed the electrical upgrade could be completed without disturbing the asbestos containing material. Indeed, the evidence at trial established that the hazardous material around the pipe was not disturbed, except for an intentional "sample taking."

Shortly after work began, Waco submitted a "change order" showing its intent to drill through a cement soffit board on the exterior of the building in the courtyard of the school. NPS provided no new information to Waco after the submission of the change order. While drilling into the soffit board, an employee for Waco, David Roby, twice asked Holloway whether a suspicious substance in the soffit contained asbestos. Holloway told Roby that it contained no asbestos and directed him to continue working. Later testing revealed that the soffit contained 15% Chrysotile asbestos.

On November 24, 2003, the Commissioner conducted an inspection of Waco's worksite in response to a complaint that workers had drilled through asbestos containing material without utilizing the proper safety precautions. Jeanie Buckingham, the Commissioner's inspector, cited Waco for eleven asbestos related violations and one violation for having inadequate health personnel on site.

Accordingly, the Commissioner has charged Waco with the following citations. First, the Commissioner claims Waco did not have individuals appropriately trained in first aid consistently on site, in violation of 29 C.F.R. § 1926.50(c) (2006).[1] Second, the Commissioner asserts that Waco's failure to

---

[1] The Virginia Administrative Code adopts provisions identical to the Federal Construction Industry Standards of 29 C.F.R. § 1926. 16 Va. Admin. Code § 25-175-1926 (2005). "Since these Construction Industry Standards are identical to the federal regulations and are available elsewhere, the Virginia Code Commission excluded the text of these regulations from the Virginia Administrative Code." Id. Accordingly, for convenience, the Court will cite to the Federal

utilize proper safety precautions when drilling though the asbestos-containing soffit violated the following VOSH standards: 29 C.F.R. §§ 1926.1101(e)(1) (regulated area), 1926.1101(f)(2)(ii) (exposure assessment), 1926.1101(g)(9)(i) (wet methods), 1926.1101(g)(9)(iv) (isolation methods), 1926.1101(h)(3)(iii)(A) (respirators), 1926.1101(i)(1) (protective clothing), 1926.1101(k)(3)(i) (asbestos identification), 1926.1101(k)(9)(v) (class III asbestos training), 1926.1101(l)(2) (asbestos disposal), 1926.1101(o)(4)(ii) (wet methods). Last, the Commissioner has charged Waco with a violation of 29 C.F.R. § 1926.1101(k)(9)(vi) for failing to provide required asbestos training to employees engaged in Class IV asbestos work. Waco was assessed $1,125.00 for the first violation and a total of $15,000.00 for all the asbestos related citations.

## II. Analysis

### A. Soffit Board Related Infractions

#### 1. Notice

For each citation, the Commissioner must prove: "(1) the applicability of the standard, (2) the existence of noncomplying conditions, (3) employee exposure or access, and (4) that the employer knew or with the exercise of reasonable diligence could have known of the violative condition." *Secretary of Labor v. Dun-Par Engineered Form Co.*, 12 OSHC (BNA) 1962, 1965 (OSHRC 1986). The first three criteria stated in *Dun-Par* are not at issue with respect to the soffit violations. Waco does not contest that the regulations apply, that the soffit indeed contained asbestos, that required precautions were not implemented on the worksite, and that Waco's workers were exposed to the hazard. The remaining issue is whether Waco knew or could have known, with the exercise of reasonable diligence, of the violations.

"[W]hen a supervisory employee has actual or constructive knowledge of the violative conditions, that knowledge is imputed to the employer, and the Secretary satisfies his burden of proof." *Dover Elevator Co.*, 16 OSHC (BNA) 1281, 1286 (OSHRC 1993). During the preconstruction meeting, the officials for NPS stated that there was asbestos in the building, that the AHERA plan might not identify all of the asbestos, and that, if Waco came across anything suspicious, Waco should contact NPS so it could have the material tested. This

Regulations. Additionally, the Court will look to decisions of federal courts and adjudicative bodies in making its decision. While these decisions are not binding on Virginia courts, they are persuasive and provide great perspective into similar matters of law.

general warning alone may not have been sufficient to alert Waco to the asbestos present in the soffit, but it put them on notice that the AHERA plan was not complete. This fact is significant in light of subsequent events.

Waco was put on further notice when its employee, Roby, twice asked Holloway if the soffit contained asbestos. He became concerned on each occasion because of the abnormal material dislodged by the drilling. While Holloway could not have been aware of the existence of the asbestos before the start of drilling, after Roby reported his concerns about the soffit, he was on notice of the possible presence of a hazardous substance. The effect of Roby's concern is even stronger when considered with NPS's warning. The Court holds that, under these circumstances, had Holloway exercised reasonable diligence, he would have known of the presence of asbestos in the soffit. His knowledge, of course, is imputed to Waco.

## 2. Reliance

Throughout its case in chief, Waco maintained that it should not be held liable because NPS failed in its duty as the owner of the premises to identify the hazardous material and notify Waco of its presence. Waco's position has some support in the regulations. The regulations recognize that "[m]ost asbestos-related construction activities involve previously installed building materials. Building owners often are the only and/or best sources of information concerning them. Therefore, they, along with employers of potentially exposed employees, are assigned specific information conveying and retention duties under this section." 29 C.F.R. § 1926.1101(k)(1). Specifically, building owners must "determine the presence, location, and quantity of ACM and/or PACM at the work site." 29 C.F.R. § 1926.1101(k)(2)(i). Building owners must exercise due diligence in identifying ACM and PACM. 29 C.F.R. § 1926.1101(k)(1). Having identified the hazardous material, the building owner then must notify the employers of potentially exposed employees on the worksite. 29 C.F.R. § 1926.1101(k)(2)(ii). Thus, NPS was obliged to do a thorough investigation of all possible asbestos containing materials and then inform Waco of the results of that investigation. Moreover, the change of order form should have served notice on NPS that they needed to conduct greater testing on the soffit board in question. Indeed, the Commissioner concedes that NPS's actions may have warranted further investigation.

However, Waco's claim that it cannot be held accountable for information that NPS should have conveyed to Waco is insupportable. *Secretary of Labor v. James Howell & Co.* notes a history and pervasive trend toward holding an on-site employer liable for any infractions, regardless of the building

owner's failure to communicate the location and quantity of hazardous materials. *Secretary of Labor v. James Howell & Co.*, 19 OSHC (BNA) 1277, No. 99-1348, 2000 OSHARC LEXIS 120, at *8 (OSHRC December 7, 2000). In that case, an inspector surveyed the defendant's work site and issued citations alleging violations under § 1926.1101 similar to those in the present case. *Id.* at *2. At the hearing for the alleged offenses, the defendant contended that it was not liable because it relied on the information provided to it by the building owner as denoted under § 1926.1101(k). *Id.* at *5. At a preconstruction meeting, the building proprietor said that there was no asbestos and offered to provide documentation of that fact. *Id.* at *7-*8. It was "undisputed that the [building owner] misled" the defendant into believing that "testing showed that there was no ACM." *Id.* at *8. However, the commission held that "employees must not depend on the good faith of their employers whose information sources may be defective." *Id.* *8 (*quoting* Occupational Exposure to Asbestos, 59 Fed. Reg. 40,964, 41,015 (August 10, 1994). Under long standing OSHA policy, "*both* an owner and outside contractor may be cited for violations of the asbestos standard if the owner fails to notify the contractor of the presence and location of asbestos, and the contractor subsequently fails to comply with the specific work practices required by the standard." *Id.* at *9.

Another important consideration is the Commissioner's power to determine when and how to assess violations. The parties have presented contrasting perspectives about who holds the duty to investigate and communicate the location of ACM and PACM. Normally, courts show great deference to agencies regulating employee work conditions. "When the meaning of regulatory language is ambiguous, OSHA's interpretation will be given effect so long as it is reasonable in that it sensibly conforms to the purpose and wording of the regulations." *Tierdael Construction Co. v. OSHRC*, 340 F.3d 1110, 1115 (6th Cir. 2003). Likewise, the Virginia courts should give deference to the Commissioner of Labor and Industry when assessing penalties under the same code. In this case, the regulations do assign building owners specific disclosure obligations, but the regulations do not allow employers to rely on these disclosures exclusively. Rather, the regulations explicitly state that employers must also "identify the presence, location, and quantity of ACM, and/or PACM." 29 C.F.R. 1926.1101(k)(3). Because the Commissioner has suggested a reasonable interpretation of the statutory language that conforms to the wording and purpose of the regulation, the Court is inclined to give it added weight.

The Court holds that both the employer and building owner may be liable for an asbestos related infraction when the building owner fails to identify a hazardous material or communicate the existence of that hazardous material to

the employer. The Occupational Safety and Health Review Commission has reached the same conclusion based on similar facts and identical law, and the Virginia Department of Labor, the Commonwealth's "OSHA agency," concurs. The conclusion was based on the cogent principle that the regulations are meant to protect construction employees and those employees are best protected when both the employer and building owner bear the burden of identifying ACM and PACM. Thus, the Court finds that Waco was properly charged with the asbestos related violations because it should have known of the presence of the hazardous material at the worksite. NPS's failure to disclose the presence of the asbestos is no defense. Waco had an independent duty to utilize due diligence to discover asbestos at the work site. Therefore, the Court affirms all the citations and penalties that arose from Waco's failure to utilize proper safety precautions when drilling through the asbestos-containing soffit board.

## B. Class IV Asbestos Operations Training

The Commissioner has also charged Waco with violating 29 C.F.R. § 1926.1101(k)(9)(vi). The citation alleges that Waco's employees worked above the hallway at Oceanair Elementary School near several pipes insulated with air-cell, which contained 20% Chrysotile asbestos, and that these employees had not been provided with asbestos awareness training. This regulation requires specific "[t]raining for employees performing Class IV operations." "Class IV asbestos work" is defined as "maintenance and custodial activities during which employees contact but do not disturb ACM or PACM and activities to clean up dust, waste, and debris resulting from Class I, II, and III activities." 29 C.F.R. § 1926.1101(b).

Waco concedes that "[a]sbestos awareness training is only required under § 1926.1101(k)(9)(vi) if the employer is working in close proximity to asbestos." Nonetheless, a review of the photographs submitted to the Court as Plaintiff's Exhibits 1b and 1c shows that temporary wiring hung by Waco rests within a few inches of the pipe insulated with asbestos. The Court finds that the employees were in very close proximity to the pipe during the repair and should have received the required asbestos training. As a result, this citation will be affirmed as well.

## C. Medical Services and First Aid

Waco received a citation for violating 29 C.F.R. § 1926.50(c), which states, in the absence of an infirmary, clinic, hospital, or physician that is reasonably accessible in terms of time and distance to the worksite which is

available for injured employees, a person who has a valid certificate in first-aid training from the U.S. Bureau of Mines, the American Red Cross, or equivalent training that can be verified by documentary evidence shall be available at the worksite to render first aid.

The court finds that this allegation lacks factual support. A person with required first aid training was intermittently on site and the school nurse was also on duty during some, but not all, of the hours of work. It is agreed that a first-aid trained person was not on site during all working hours. However, the investigator was able to drive to the nearest rescue facility 0.8 miles away in four minutes at a normal speed, without emergency lights or sirens. The Commissioner concedes that he has established a four-minute response standard for medical attention. Therefore, the Court finds that the Commissioner has not shown the "absence of an infirmary, clinic, hospital, or physician that is reasonably accessible in terms of time and distance to the worksite." 29 C.F.R. 1926.50(c). Because the nearest rescue facility was four minutes away, it was accessible under the Commissioner's own standards. This citation, then, is vacated.

## III. Conclusions

For the forgoing reasons, the Court affirms the asbestos related citations and proposed penalties. Based on NPS's representations and Roby's questions, Waco should have known through a reasonable exercise of diligence that the cement soffit contained asbestos. Moreover, NPS's failure to inform Waco that the soffit contained asbestos did not relieve Waco of its duty to exercise reasonable diligence to locate asbestos on the worksite. However, because a rescue facility was located four minutes from the worksite, the first aid related citation is vacated.